(No. 42340.—

NORCROSS W. PUTNAM *et al.*, Appellants, *vs.* NEW AMSTERDAM CASUALTY Co., Appellee.

*Opinion filed June 29, 1970.*

WARD and SCHAEFER, JJ., dissenting.

JOHN G. PHILLIPS, of Chicago, (SIDNEY Z. KARASIK, of counsel,) for appellants.

SCHAFFENEGGER & WATSON, of Chicago, (JACK L. WATSON, of counsel,) for appellee.

Mr. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiffs, while passengers in a car owned by a friend, John J. Porchivina, and driven by Mrs. Porchivina, were injured in 1961 in an automobile accident caused by an uninsured motorist. The Porchivinas were the owners of an insurance policy with Hartford Accident & Indemnity Company, and plaintiffs, as passengers in the Porchivina car, were also covered as insureds under the policy. The plaintiffs, another passenger and the Porchivinas all made claims under the uninsured motorist provision of the Hartford policy, which limited coverage to $10,000 per person and $20,000 per accident. The $20,000 limit was exhausted, with plaintiffs recovering $7,500 as their apportioned share. The plaintiffs then instituted the present action under the uninsured motorist provision of their own insurance policy with defendant, New Amsterdam Casualty Company, seeking compensation to the extent their damages exceeded the $7,500 recovered from Hartford. In a bench trial, the circuit court of Cook County found that New Amsterdam was not liable under the terms of its policy with plaintiffs. On appeal to the Appellate Court for the First District, the judgment for defendant was affirmed. (110 Ill. App. 2d 103.) We granted leave to appeal.

New Amsterdam successfully urged below that under the express conditions of its policy with plaintiffs, the availability of other insurance, *i.e.,* the hosts' (the Porchivinas) policy with Hartford, relieved defendant from liability when its insured was injured in a car he did not own, except to the extent its policy limits exceeded the limits provided on the other insurance. Since both policies had the same limits of $10,000/$20,000, no "excess" coverage was provided. Plaintiffs object to this construction, arguing that since the Hartford insurance was not collectible by them to the full policy limits, it was not "available" so as to relieve New Amsterdam under the policy's "other insurance" provisions. They also contend that the "other insurance" provisions of the New Amsterdam policy should not be given

effect, since, as the parties stipulated, identical provisions were contained in the Hartford policy; thus there is alleged to be a conflict as to which policy's "other insurance" provisions control, and plaintiffs suggest that equity requires us to disregard the provisions in both policies. The provisions which control the uninsured motorist coverage of the two policies are as follows:

"5. *Other Insurance.* With respect to bodily injury to an insured while occupying an automobile not owned by a named insured under this endorsement, the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this endorsement exceeds the sum of the applicable limits of liability of all such other insurance.

"With respect to bodily injury to an insured while occupying or through being struck by an uninsured automobile, if such insured is a named insured under other similar insurance available to him, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable under this endorsement for a greater proportion of the applicable limit of liability of this endorsement than such limit bears to the sum of the applicable limits of liability of this insurance and such other insurance.

"Subject to the foregoing paragraphs, if the insured has other similar insurance available to him against a loss covered by this endorsement, the company shall not be liable under this endorsement for a greater proportion of such loss than the applicable limit of liability hereunder bears to the total applicable limits of all valid and collectible insurance against such loss."

New Amsterdam argues that no conflict exists in the application of the various clauses of the two policies. The

company urges that the "other insurance" provision of the Hartford policy which describes plaintiffs is the second paragraph above (commonly known as a "pro-rata clause"), since plaintiffs were "insureds" struck by an uninsured automobile; the first paragraph (known as an "excess clause", or more specifically an "excess-escape clause") in the Hartford policy does not describe plaintiffs, since they were not "occupying an automobile not owned by a named insured"—they were in fact occupying an automobile which *was* owned by a named insured under the Hartford policy —*i.e.*, Mr. Porchivina. The New Amsterdam policy, on the other hand, did describe plaintiffs in the first paragraph; the Porchivinas' car, which plaintiffs were occupying, was "an automobile not owned by a named insured" of the New Amsterdam policy. It is defendant's position that the *applicable* provisions of the policies do not conflict—Hartford provides for prorating with any other available insurance, but since in this factual setting New Amsterdam extends "excess" coverage only, and no coverage at all when its limits do not exceed the limits of other insurance, its policy does not constitute "other available insurance" so as to activate Hartford's *pro rata* clause. Defendant suggests that this view was apparently held by Hartford as well, since that company never sought contribution from New Amsterdam toward payment of the claim of plaintiffs. Thus it is maintained that the availability of the Hartford coverage properly relieves New Amsterdam, by activating its policy's excess-escape clause. As to plaintiffs' contention that the Hartford coverage was not collectible by them to the full extent of the $10,000/$20,000 limit, and hence should not be deemed "other available insurance" within the meaning of the excess-escape clause, New Amsterdam answers that the language in its clause unambiguously provides otherwise.

It is not surprising that the resolution of "other insurance" problems has been a difficult task in many jurisdic-

tions, including Illinois. Courts have dealt with the problem in several contexts, and a variety of theories have been promulgated.

Presumably from the time insurance first became available, there has been at least the possibility that multiple coverage situations would occur. In the field of property insurance, this prospect understandably encouraged carelessness and fraud where more than full compensation could be recovered upon the loss of the insured property. Property insurers recognized the hazards of allowing such multiple recovery, and responded by incorporating "other insurance" provisions into their policies. (Comment, "Concurrent Coverage in Automobile Liability Insurance" (1965), 65 Colum. L. Rev. 319, 320; 8 Appleman, Insurance Law and Practice (1942), sec. 3905, at 270.) Such provisions have had the effect of reducing multiple recoveries, and have also served thereby to limit the liability of insurers. These factors led to a proliferation of similar limitations on liability under automobile insurance policies, which now engender the vast majority of case law in the area. (See generally Annot. (1961), 76 A.L.R. 2d 502; Annot. (1956), 46 A.L.R. 2d 1163.) There are three basic types of "other insurance" provisions commonly used in automobile liability policies: the *"pro-rata* clause", the "excess clause", and the "escape clause". The typical *pro-rata* clause provides that when an insured has other insurance available, the company will be liable only for the proportion of the loss represented by the ratio between its policy limit and the total limits of all available insurance. The excess clause allows coverage only "over and above" other insurance. The escape clause holds the policy null and void with respect to any hazard as to which other insurance exists. As illustrated by the policies in this case, combinations of the basic clauses frequently arise within a single provision, and separate provisions are often contained within a single policy to control coverage arising under varying circumstances.

It should be noted at this juncture that the clause upon which defendant relies is a standard "excess-escape" hybrid, normally found in uninsured motorist policies as a limitation on the coverage provided when the insured is injured in a car not owned by a named insured under the policy. The clause provides that under such circumstances, if other insurance is available, the policy will apply only as excess coverage. The escape feature is found in the proviso that such excess coverage is limited to the amount by which the policy's liability limit exceeds the limit of liability of the other insurance. This escape feature substantially reduces the coverage which would be provided by an excess policy not so limited. Instead of furnishing additional compensation up to its limit in the amount by which an insured's damages exceed his recovery from other insurance, the policy only compensates to the extent that its own limit exceeds the limit of the other policy. Furthermore, although the clause provides for excess coverage, its practical effect is usually controlled by the escape provision—since most uninsured motorist coverage is in the same minimum amount, there is rarely an instance where an "excess" policy limit exceeds the limit of the other policy; hence it is an infrequent situation for an "excess" policy to provide any coverage when its "excess-escape clause" has been given effect. Donaldson, "Uninsured Motorist Coverage" (1969), 36 Ins. Cnsl. J. 397, 423-24; Drummond, "Uninsured Motorist Coverage—A Suggested Approach to Consistency" (1969), 23 Ark. L. Rev. 167, 183-84; Notman, "A Decennial Study of Uninsured Motorist Endorsements" (1968), 540 Ins. L.J. 22, 33-35; Widiss, "Perspectives on Uninsured Motorist Coverage" (1967), 62 Nw. U. L. Rev. 497, 522-23.

The obvious difficulties involved in reconciling the applicable clauses of two or more insurance policies prompted recourse by the courts to several simplistic theories. The policy issued earliest has been reasoned on that basis alone to be the primary coverage, notwithstanding the presence

of "other insurance" clauses which provided otherwise. (See, *e.g., New Amsterdam Cas. Co.* v. *Hartford Accident & Indemnity Co.* (6th cir. 1940), 108 F.2d 653.) Other courts have placed primary liability with the policy issued to the primary tortfeasor. (See, *e.g., American Auto Insurance Co.* v. *Pennsylvania Mutual Indemnity Co.* (3d cir. 1947), 161 F.2d 62; *Commercial Casualty Co.* v. *Hartford Accident & Liability Co.,* 190 Minn. 528, 252 N.W. 434; *Maryland Casualty Co.* v. *Bankers Indemnity Ins. Co.,* 51 Ohio App. 323, 200 N.E. 849.) Courts have also placed primary liability on whichever insurer more specifically covered the risk involved. (See, *e.g., Hartford Steam Boiler Inspection & Ins. Co.* v. *Cochran Oil Mill & Ginnery Co.,* 26 Ga. App. 288, 105 S.E. 856; *Trinity Universal Ins. Co.* v. *General Accident Fire and Life Assurance Corp.,* 138 Ohio St. 488, 35 N.E.2d 836; Annot (1944), 150 A.L.R. 636.) These theories have all been discarded, having proved unworkable and unreasonable. The underlying objection to such resolutions has been that they completely ignore the "other insurance" clauses and thereby place no emphasis whatever on the most significant factor of all—the intent of the parties. See Comment, " 'Other Insurance' Clauses: The Lamb-Weston Doctrine" (1968), 47 Ore. L. Rev. 430, 432-33; Watson, "The 'Other Insurance' Dilemma" (1966), 54 Ill. B.J. 486, 489-90.

Rather than resort to theories which place primary liability on one insurer without attempting to give effect to the "other insurance" clauses, the courts have generally acknowledged that the provisions exist and should control if they can be given effect compatibly. The conclusion is almost universal under this approach that identical clauses are incompatible, and thus where the applicable clause of each conflicting policy is identical, the courts have refused to give effect to either. The liability is then prorated between the policies. The courts have recognized that this approach is fair when there is no rational basis for applying

the clause of one policy and refusing to apply the identical clause of another policy. (See Annot. (1960), 69 A.L.R.2d 1122; Watson, "The 'Other Insurance' Dilemma", 54 Ill. B.J. 486, 488-89.) But the appeal of this simple and easily applied rule has tempted some courts into applying the pro-ration procedure in every instance involving conflicting "other insurance" clauses, on the basis that all such clauses are irreconcilably in conflict with one another, even where the applicable clauses are not identical. The landmark case ordering proration in a conflict between dissimilar clauses was *Oregon Automobile Insurance Company* v. *United States Fidelity & Guaranty Co.* (9th cir. 1952), 195 F.2d 958. The United States Court of Appeals was faced with a conflict between an excess clause and an escape clause, and the applicable Oregon law provided no authority on the issue. Although the court conceded that the vast majority of authority elsewhere would give effect to the excess clause and thereby hold the escape clause policy primarily liable, the court decided that the majority's reasoning was "completely circular, depending, as it were, on which policy one happens to read first—the problem is little different from that in-volved in deciding which came first, the hen or the egg." (195 F.2d at 959.) The Oregon Supreme Court later adopted the same view as its own, stating flatly that, "In our opinion, whether one policy uses one clause or another, when any come in conflict with the 'other insurance' clause of another insurer, regardless of the nature of the clause, they are in fact repugnant and each should be rejected in toto." (*Lamb-Weston, Inc.* v. *Oregon Auto Ins. Co.*, 219 Ore. 110, 129, 341 P.2d 110, 119; modified on rehearing, 219 Ore. 130, 346 P.2d 643.) The reasoning of the court in *Lamb-Weston* reveals a misplaced reliance on authority from other jurisdictions; the "Oregon rule" which it adopts from *Oregon Auto* has actually found very little support. See generally, " 'Other Insurance' Clauses: The Lamb-Weston Doctrine", 47 Ore. L. Rev. 430, at 437-39; but see

*State Farm Mutual Auto Ins. Co.* v. *Travelers Ins. Co.* (La. App. 1966), 184 So. 2d 750.

The majority approach, unlike the Oregon rule, is to reconcile the applicable clauses of conflicting policies, and thereby give effect to the intention of all the parties, whenever possible. Of the six possible combinations of the three basic clauses, three combinations find identical clauses in conflict. As noted earlier, in such situations it is generally held to be impossible to give effect to the intent of all parties, and thus identical clauses are deemed incompatible. Most cases do not involve identical clauses, however; when the conflict between clauses is escape v. excess, *pro rata* v. escape, or *pro rata* v. excess, as here, the majority of jurisdictions reconcile the conflict by giving effect to one clause and finding the other to be inapplicable. For instance, it is generally found that a policy conditioned by an excess clause, or an excess-escape clause, is not such "other available insurance" as will activate the *pro-rata* clause of another policy; thus the excess clause is given its intended effect while the *pro-rata* clause is inapplicable, coinciding with the intent that it should apply only if there is other insurance available. See Annot. (1961), 76 A.L.R. 2d 502; 8 Appleman, Insurance Law and Practice (1962), sec. 4914; Couch, Cyclopedia of Insurance Law 2d (1966), 62:49; Donaldson, "Uninsured Motorist Coverage," 36 Ins. Cnsl. J. 397, at 424-26; Drummond, "Uninsured Motorist Coverage," 23 Ark. L. Rev. 167, at 183; Note, "The Effect of Other Insurance Clauses in Cases of Concurrent Coverage of Uninsured Motorist Insurance" (1968), 37 U. Cin. L. Rev. 582, 588-91.

Turning to the history in Illinois, we find authority for both the majority view and the Oregon rule. A string of cases which developed as authority for the Oregon rule was initiated by the Appellate Court for the First District in *Continental Casualty Co.* v. *New Amsterdam Casualty Co.,* 28 Ill. App. 2d 489. The court ordered apportionment of

liability in that case, citing the *Oregon Auto* case; however, the case involved a conflict between two applicable excess clauses, and the apportionment was in accordance with the universally accepted rule in such cases. Nevertheless, the appearance in *Continental Casualty* of authority for the Oregon rule was reinforced under similar circumstances in *Laurie* v. *Holland America Insurance Co.* (1st Dist.), 31 Ill. App. 2d 437 and finally applied by the Appellate Court for the Second District in a manner which was more clearly contrary to the majority view. (*Economy Fire & Casualty Co.* v. *Western States Mutual Insurance Co.*, 49 Ill. App. 2d 59.) The court did not seek out the applicable clauses of the "other insurance" provisions contained in the policies involved, but simply noted that the provisions of the conflicting policies were identical *in toto;* the court reasoned from that fact alone that the prior Illinois authority required proration of liability. The squarest authority in Illinois for the Oregon rule arose in *New Amsterdam Casualty Co.* v. *Certain Underwriters at Lloyds, London* (1st Dist.) 56 Ill. App. 2d 224, where the court prorated liability between two policies although the "other insurance" provision conflict was between an excess clause and an escape clause. Shortly after that decision, the Appellate Court for the Second District resolved a conflict between identical provisions *in toto* where the applicable clauses were a *pro-rata* clause in one policy and an excess clause in the other. (*Jensen* v. *New Amsterdam Insurance Co.*, 65 Ill. App. 2d 407.) The court recalled *Continental Casualty* and *Laurie,* noting that on their facts they were not authority for the Oregon rule. The court overruled *Economy Fire & Casualty* insofar as it adopted the Oregon rule, distinguished the *New Amsterdam-Lloyds of London* appellate court decision and proceeded to dispose of the case before it according to the majority view, finding the *pro-rata* policy primarily liable.

At this juncture, we granted leave to appeal from the decision in the *New Amsterdam-Lloyds of London* case, in

which the Oregon rule had been applied. We reviewed the developments in Illinois and elsewhere, and concluded that the majority view should prevail. In reversing the appellate court, we held that, "Lloyds does not escape through use of the clause denying liability if any person other than the named insured is also covered by other valid and collectible insurance, because plaintiff's policy was not 'other' insurance but rather 'excess' coverage * * *, plaintiff's excess insurance never came into force. It did not furnish 'other valid and collectible insurance' and Lloyds must bear the entire amount of the damages and costs." (*New Amsterdam Casualty Co. v. Certain Underwriters at Lloyds, London,* 34 Ill.2d 424, 430.) Our adoption of the majority view has since controlled the disposition of several appellate court cases upon facts quite similar to those before us here. *Tindall* v. *Farmer's Automobile Management Corp.* (3d Dist.), 83 Ill. App. 2d 165; *Vignali* v. *Farmers Equitable Insurance Co.* (3d Dist.), 71 Ill. App. 2d 114; see also *State Farm Mutual Auto Insurance Co.* v. *Mohan* (3d Dist.), 85 Ill. App. 2d 10; *Farmers Automobile Insurance Ass'n* v. *Iowa Mutual Insurance Co.* (2d Dist.), 77 Ill. App. 2d 172.

Plaintiffs here argue that our holding in the *New Amsterdam-Lloyds of London* case should be narrowly viewed, as authority only for the disposition of a conflict between an excess clause and an escape clause, and consequently should not guide us in this case. However, as we stated then, we find the general principles underlying the majority view to be compelling. Thus, were the applicability of the majority view to the conflicting clauses in this case the only issue before us, we would affirm the judgment of the appellate court without further discussion. However, plaintiffs raise an additional question relating to the language of defendant's excess-escape clause, and also challenge the "other insurance" defense on the basis of public policy.

The clause upon which defendant relies has the effect of barring recovery when other insurance is *available* to the insured party. Plaintiffs suggest that the clause be construed as effective in barring recovery only to the extent the other insurance is *collectible,* and urge that in this case they should at least be entitled to recover the amount by which their damages exceed the "other insurance" recovery. For authority supporting this view, we are directed to the landmark case of *Zurich General Accident & Liability Insurance Company* v. *Clamor* (7 th cir. 1941), 124 F.2d 717, cited with approval in our decision of the *New Amsterdam-Lloyds of London* case. The United States Court of Appeals faced a conflict between an excess clause and an escape clause which stated that the policy would not provide coverage when there was "other valid and collectible insurance" available. The court concluded that the escape clause was not effective since the "excess insurance" was not "other insurance" so as to activate the escape clause. Plaintiffs apparently misconstrue this holding, believing that the court held the excess policy to be unavailable since it was not collectible. The reverse is true—the policy was uncollectible for the simple reason that it was not available. Thus, the court did not evaluate "availability" in terms of "collectibility" as plaintiffs would have us do here. In any event, we find no authority in *Zurich General* for plaintiffs' argument that *"collectibility in full"* of other insurance should be requisite to activate a clause which refers clearly to "availability" only. While we find that the construction urged by plaintiffs has met with scattered acceptance elsewhere, we believe it is unjustified in the face of the clearly contrary meaning of the language. (*Kraft* v. *Allstate Ins. Co.,* 6 Ariz. App. 276, 431 P.2d 917; *Moore* v. *Hartford Fire Ins. Co. Group,* 270 N.C. 532, 155 S.E.2d 128; see Drummond, "Uninsured Motorist Coverage," 23 Ark. L. Rev. 167, at 188-90.) Perhaps plaintiffs would urge that the term "collectible" as used in the third paragraph of the policy's "other insur-

ance" provisions should be imputed to the first paragraph, upon which defendant relies. But certainly the policy unambiguously refutes such a contention; indeed, the fact that the policy uses both terms, "collectible" and "available", in separate clauses, serves as an additional indication, beyond the clear meaning of the words themselves, that a distinction is intended. The only reasonable conclusion is that the applicable policy language clearly requires that defendant's coverage be deemed "excess" coverage only.

The defendant's policy also clearly provides that its coverage as excess insurance is "only in the amount by which the applicable limit of liability of this endorsement exceeds the sum of the applicable limits of all such other insurance." This portion of the excess-escape clause is again clear and unambiguous, leaving no room for alternative interpretations of its effect; defendant's policy limits do not exceed the applicable limits of the available Hartford policy, and hence there is no "excess" coverage provided. There being other insurance available here, with a $10,000/$20,000 limit, it is clear that defendant's clause should take effect and bar recovery unless public policy requires a contrary conclusion.

In challenging the denial of recovery on the basis of public policy, plaintiffs assert that motorists should be permitted to purchase uninsured motorist insurance beyond the $10,000/$20,000 minimum limits of the Financial Responsibility Law. (Ill. Rev. Stat. 1961, ch. 95½, pars. 7—101 *et seq.;* now, Ill. Rev. Stat. 1969, ch. 95½, pars. 7A—101 *et seq.*) We certainly do not quarrel with that proposition. We recognize, as did the appellate court in *Deterding* v. *State Farm Mutual Automobile Insurance Co.,* 78 Ill. App. 2d 29, that the legislature never intended the minimum limits under the Financial Responsibility Law to be deemed the maximum permissible limits for uninsured motorist coverage. Indeed, the legislature has made its intent explicit by amending the Insurance Code as it relates to uninsured

motorist coverage to provide: "Nothing in this Section may be construed to prevent any insurer from extending coverage under terms and conditions more favorable to its insureds than is required hereunder." (Ill. Rev. Stat. 1969, ch. 73, par. 755a(2).) Granting that the plaintiffs urge a reasonable public policy, however, we simply fail to perceive how that position requires a reversal of the appellate court in this case. Nothing stated in that court's decision, or in this opinion, suggests that the plaintiffs here should not have been permitted to purchase broader coverage than that provided by the New Amsterdam policy. The simple fact is that they did not do so.

Plaintiffs allude to more formidable public policy considerations which we choose to discuss notwithstanding the fact that they are probably not in a position to present the argument. The plaintiffs were injured by an uninsured motorist in 1961; in 1963 the legislature added a provision to the Insurance Code requiring all motor vehicle liability policies to include, unless rejected by the insured, uninsured motorists coverage in the limits set forth in the Financial Responsibility Law; in 1967, the legislature made the coverage mandatory and expressed the intention that the limit stated in the Financial Responsibility Law should be deemed a mnimum not precluding coverage in higher amounts. (Ill. Rev. Stat. 1963, ch. 73, par.. 755a; Ill. Rev. Stat. 1969, ch. 73, par. 755a(2), as amended, June 28, 1967.) Had the plaintiffs' uninsured motorist coverage been provided under compulsion of either of these legislative directives we would be squarely confronted with the question whether a policy with an excess-escape clause complies with the statutory requirements.

Consideration of this question evokes the seeming anomalies to which plaintiffs allude. In the case before us, for instance, the plaintiffs would ultimately have been in a better position had their host been uninsured as well as the tortfeasor, or had they not qualified as insureds under their

hosts' policy. Had either of these possibilities obtained, plaintiffs would not have had "other insurance available," and would thereby have been in a position to recover up to the limits of their own policy with New Amsterdam. The same total recovery might be had in this case if the "escape" provision of the "excess-escape clause" were to be found violative of public policy or unacceptable in light of the statutory requirement, since it would then be possible to recover from the "excess" insurance for at least a portion of the damages which remained uncompensated after recourse to the host's policy. At the same time we envision these prospects, however, we should consider the effect of plaintiffs' proposal that the policies should be "stacked" to allow full compensation. If such were mandated as a matter of public policy, motorists would be in the unusual position of preferring that any injuries sustained be at the hands of uninsured motorists rather than motorists who comply with the Financial Responsibility Law. In the case before us, for instance, plaintiffs have already recovered from their host's policy the amount they would have received had the tortfeasor been insured to the extent required by statute; but plaintiffs plead that they should be entitled to greater compensation, as a matter of public policy or legislative dictate, by virtue of the fact that the tortfeasor was not only a careless driver, but a financially irresponsible one as well.

The question of public policy, it seems to us, is largely manufactured. Construing an insurance contract accurately and giving it the effect which its language clearly commands, is not *ipso facto* a breach of public policy merely because it disappoints the innocent victim of an uninsured motorist. Whether an excess-escape clause in an uninsured motorist endorsement is violative of the statutory requirements for such coverage, rests upon a determination of legislative intent. With the recent trend toward compulsory uninsured motorist coverage, this question has understandably been posed in various contexts elsewhere. While there

is some split in authority, the courts have generally reasoned that the legislature's intent in requiring such insurance is satisfied by coverage which assures that the insured will fare equally well whether the tortfeasor is insured or not. (See, *e.g.*, *M.F.A. Mutual Ins. Co.* v. *Wallace,* 245 Ark. 230, 431 S.W.2d 742; *Kirby* v. *Ohio Casualty Ins. Co.,* 232 Cal. App. 2d 9, 42 Cal. Rptr. 509; *Burcham* v. *Farmers Ins. Exchange,* 255 Ia. 69, 121 N.W.2d 500; *Maryland Casualty Co.* v. *Howe,* 106 N.H. 422, 213 A.2d 420; *McCarthy* v. *Motor Vehicle Accident Indemnity Corp.,* 16 App. Div. 2d 35, 224 N.Y.S.2d 909; see also Denny, "Uninsured Motorist Coverage — Present and Future" (1966), 52 Va. L. Rev. 538, 540-42, 552-56; Donaldson, "Uninsured Motorist Coverage," 36 Ins. Cnsl. J. 397, at 424-26; Drummond, "Uninsured Motorist Coverage," 23 Ark. L. Rev. 167, at 190-91.) The rare contrary rulings come mainly from Virginia and Florida. (See also, *Moore* v. *Hartford Fire Ins. Co. Group,* 270 N.C. 532, 155 S.E.2d 128.) The cases stemming from Virginia reveal a conflict between the reasoning employed by the Virginia Supreme Court and the United States Court of Appeals for the Fourth Circuit, and provide the most frequently cited authorities on both sides of the issue. The United States District Court for the Western District of Virginia was apparently the first court to accept the argument that an "other insurance" clause violated the statutory purpose of compulsory uninsured motorist coverage. (*Travelers Indemnity Co.* v. *Wells* (W.D.Va. 1962), 209 F. Supp. 784.) That court's reasoning was emphatically rejected by the United States Court of Appeals for the Fourth Circuit, which overruled the decision stating: "The Law did not propose to provide an injured guest with uninsured protection beyond the statutory amounts through a combination of the host's insurance and that owned by the guest for himself. If the claim of the Wells were correct, then the uninsured endorsements would guarantee to policyholders a solvency on the

part of an uninsured far greater than that required for him to qualify as an insured motorist—$15,000 and $30,000 coverage—under the Virginia automobile registration statute. [Citing the statute.] Such a result is nowhere intimated in the Law." (*Travelers Indemnity Co.* v. *Wells* (4th cir. 1963), 316 F.2d 770, 773.) The decision was rendered without the benefit of any applicable rulings from the Virginia Supreme Court; however, the Court of Appeals did find guidance in the fact that the "other insurance" provisions had been approved for use by the State commission charged with the administration of the insurance statutes. The court therefore reasoned that giving effect to the applicable excess-escape clause "embodies the Commission's understanding of the intendment of the law: that unless his policy expressly stipulates higher limits, protection of a person or persons injured by an uninsured automobile driver is not to be expanded beyond the limits fixed in the law—to repeat, $15,000 and $30,000." (*Travelers Indemnity Co.* v. *Wells* (4th cir. 1963), 316 F.2d 770, 773.) The Virginia Supreme Court, however, subsequently decided that the compulsory coverage statute rendered the "other insurance" clause void and ineffective. (*Bryant* v. *State Farm Mutual Auto Ins. Co.,* 205 Va. 897, 140 S.E.2d 817.) The same result was reached shortly thereafter in Florida, where the State Supreme Court reversed a lower appellate court ruling which had found the clause's effect to be acceptable. (*Sellers* v. *United States Fidelity and Guaranty Co.* (Fla. 1966), 185 So. 2d 689.) Here also the State ruling displaced the judgment of a United States Court of Appeals, this time of the Fifth Circuit. (*Chandler* v. *Government Employees Ins. Co.* (5th cir. 1965), 342 F.2d 420.) In deciding that the excess-escape clause in issue did not violate the Florida statute, the lower Florida appellate court recounted the Federal court's persuasive disposition of the "statutory purpose" attack on the validity of "other insurance" clauses: "In rejecting that contention the federal court held, and we

agree, that the public policy of this state is to afford the public generally the same protection that it would have had if the uninsured motorist had carried the minimum limits of liability. We adhere to that pronouncement as a sound declaration of the applicable law." (*United States Fidelity and Guaranty Co. v. Sellers* (Fla. App. 1965), 179 So.2d 608, 611.) Plaintiffs assert, citing *Bryant, Sellers* and *Moore,* that the approach which finds "other insurance" clauses to be valid, has been "discredited in other jurisdictions." We do not find the reasoning employed by the courts in those few jurisdictions to be so compelling. Rather, we believe the reasonable purpose of the statutory uninsured motorist provisions is to assure that compensation will be available to policyholders, in the event of injury by an uninsured motorist, to at least the same extent compensation is available for injury by a motorist who is insured in compliance with the Financial Responsibility Law.

Having found that the "excess-escape clause" of the New Amsterdam policy clearly precludes recovery here, and finding no reason to refrain from giving effect to the clause, we affirm the judgment of the Appellate Court for the First District.

*Judgment affirmed.*

Mr. JUSTICE WARD, dissenting:

The view illustrated by such cases as *Oregon Automobile Insurance Co. v. United States Fidelity and Guaranty Co.* (9th cir.), 195 F.2d 958, and *Lamb-Weston, Inc. v. Oregon Auto Insurance Co.,* 219 Ore. 110, 341 P.2d 110, and described by the majority as the Oregon rule is to me plainly to be preferred to what I consider to be the inequitable result the majority reaches here.

Too, I regard as erroneous the parenthetical conclusion of the majority that public policy would not be violated by its holding even if it were to be considered in the light of the mandatory uninsured motorist's statute (Ill. Rev. Stat.

1969, ch. 73, par. 755(a)), which was enacted after the occurrence in this case. That statute requires that all motor vehicle public liability policies provide uninsured motorist's coverage "for the protection of persons insured thereunder." The result in *Travelers Indemnity Co. v. Wells* (4th cir.), 316 F.2d 770, from which the majority quotes with approval, illustrates a reason for my disagreement with the majority on this question of public policy. In that case Wells, his wife and five other persons were riding as guests in an automobile owned and operated by Smith. A car negligently operated by an uninsured motorist collided with the Smith car, injuring all its occupants. Wells and Smith's son died from their injuries. Smith recovered $30,000 from his insurance carrier under an uninsured motorist endorsement. The Smith policy, which was in the amount of $15,000/$30,000 as required by statute, was thus no longer available as a source of benefits for Wells and his wife. Travelers, Wells's insurance carrier, had provided them also with uninsured motorist coverage in the amounts required by statute, $15,000/$30,000. Travelers denied liability to Mrs. Wells individually and as the executrix of Mr. Wells on the ground that there was other similar insurance available at the time of the accident. The court of appeals reversed the district court, which had held for Mrs. Wells, saying: "Our conviction is that in this situation no uninsured protection whatsoever was due from Travelers to the Wells. It was explicitly excluded by the Other Insurance condition. The condition made Fidelity and Casualty the primary insurer, inasmuch as the Wells were 'occupying an automobile [Smith's] not owned' by them. Travelers insurance then was confined to the amount by which its policy limit exceeded that of Fidelity and Casualty, the only other similar insurance. There was no 'excess' because the two policies were each written for the statutory limits and no more—$15,000 for one injured and $30,000 for two or more. Hence, under the Other Insurance condition Travelers

never became answerable to the Wells to any extent. Their sole insurance was the Fidelity and Casualty policy. Its absorption by the claims of others did not generate a right in the Wells to resort to Travelers' policy." Thus, the Wellses could not recover under the Smith policy in which they were third party beneficiaries nor under their own policy in which they were direct beneficiaries. I would consider such a remarkable result contrary to the legislative intention underlying the statutory requirement that policies provide uninsured motorists coverage for the protection of assured persons.

I would add that I believe the comment in the majority opinion concerning *Ullman* v. *Wolverine Insurance Co.*, 48 Ill.2d 1, reflects a misguided analysis of the controversy involved. See the dissent in that case. 48 Ill.2d at p. 8.

Mr. JUSTICE SCHAEFER joins in this dissent.