DIOCELINA TERESA PADILLA *et al.*, Indiv. and as Parents and Next Friends of Fernando Padilla, a Minor, Plaintiffs, v. NORWEGIAN-AMERICAN HOSPITAL, INC., *et al.*, Defendants (Norwegian-American Hospital, Inc., *et al.*, Intervenors-Appellees; Illinois State Medical Inter-Insurance Exchange, Respondent-Appellant).

First District (1st Division)   No. 1—92—1411

Opinion filed August 1, 1994.—Rehearing denied September 29, 1994.

Hopkins & Sutter, of Chicago (William E. Rattner, Richard A. Ifft, Julie Gage Palmer, and Michael Mishlov, of counsel), for appellant.

Bates & Meckler, of Chicago (Michael M. Marick, of counsel), for appellees.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Respondent Illinois State Medical Inter-Insurance Exchange (ISMIE) appeals an order of the circuit court of Cook County permitting intervenor Chicago Hospital Risk Pooling Program (CHRPP) to intervene in this action between plaintiffs Diocelina Teresa Padilla and J. Amparo Padilla, individually and as parents and next friends of Fernando Padilla, a minor, and defendants Norwegian-American Hospital (Hospital) and Dr. Honorato Abadilla. ISMIE also appeals the trial court's order granting judgment on the pleadings to CHRPP; the order is based on the determination that ISMIE is the primary insurer of Dr. Abadilla in this medical malpractice case.

The record on appeal indicates the following facts. On May 30, 1985, the Padillas filed a medical malpractice action against the Hospital, Dr. Abadilla and other defendants who are not named in this appeal. The medical malpractice action appears to relate to the birth and delivery of Fernando Padilla on January 22, 1985. Dr. Abadilla was insured by ISMIE up to a limit of $1 million per occurrence. ISMIE provided Dr. Abadilla with a defense at the inception of the lawsuit.

CHRPP is a trust established to insure certain nonprofit hospitals against the risks of legal liability of providing health care to patients. The Hospital participates in CHRPP, which provides up to $5 million of protection per occurrence. It is undisputed that Dr. Abadilla is also a "covered person" under the trust agreement in this case.

Throughout pretrial proceedings in this case, ISMIE took the position that Dr. Abadilla was not liable and refused to offer any money in settlement of the suit. Norwegian and other defendants, however, settled the claims against them for a sum in excess of $4 million (at a time apparently left unspecified in the record).

The record includes a letter dated October 1, 1990, in which the counsel retained by ISMIE tenders the defense of Dr. Abadilla to CHRPP, contending that the CHRPP agreement provides primary coverage and the ISMIE policy provides excess coverage in this matter. This contention was based on counsel's interpretation of "other insurance" clauses that were part of the ISMIE policy and the CHRPP trust agreement. The record also includes response correspondence from CHRPP's counsel, dated December 26, 1990, indicating that CHRPP disagreed on the coverage issue and that CHRPP would protect its interests in this matter, possibly by filing for a declaratory judgment.

This matter was scheduled to come to trial on May 15, 1991. The record contains a letter dated May 15, 1991, from CHRPP's counsel to Dr. Abadilla's counsel indicating a willingness to settle, subject to a reservation of rights, if ISMIE would contribute 50% of a reasonable settlement. A settlement conference was held before Judge Walter Kowalski in the circuit court of Cook County the same day. CHRPP expressed a willingness to reach a settlement of the entire suit, including the claims against Dr. Abadilla. A claims representative of ISMIE attended this conference. ISMIE did not offer any sum in settlement of the claims against Dr. Abadilla. CHRPP then submitted a written motion for leave to intervene in the suit, which was granted by Judge Kowalski.

On May 16, 1991, the parties reached an overall settlement of the case; CHRPP agreed to pay plaintiffs $525,000 on behalf of Dr. Abadilla. The same day, CHRPP filed a complaint in intervention against ISMIE seeking a declaration that ISMIE was the primary insurer and that CHRPP provided coverage in excess of the $1 million limit of the ISMIE policy. The complaint also sought contribution from ISMIE in the event that CHRPP had paid the settlement prior to judgment on the coverage issue. CHRPP amended this complaint on May 21, 1991.

ISMIE filed a motion to dismiss the complaint in intervention on

June 6, 1991. ISMIE contended that the dispute between CHRPP and ISMIE lacked issues of law or fact in common with the medical malpractice suit and should have been brought as a separate action. ISMIE further contended that CHRPP was not a proper party to intervene in this case. After considering legal memoranda and oral argument, the trial court denied the motion to dismiss on July 9, 1991.

Although the date is not entirely legible, it appears that ISMIE filed a motion to return the case to the motion call on August 27, 1991. ISMIE filed its answer to the amended complaint in intervention on September 5, 1991. ISMIE notified CHRPP that it would present its motion to return the case to the motion call on September 6, 1991. Both parties filed motions for judgment on the pleadings, pursuant to section 2—615(e) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—615(e)), on November 1, 1991. ISMIE's motion for judgment on the pleadings indicates that the cross-motions were filed by agreement of the parties, in consultation with Judge Sullivan, on September 6, 1991.

On March 25, 1992, Judge Sullivan entered an order granting judgment on the pleadings in favor of CHRPP. Judge Sullivan indicated in the order that the ISMIE policy provides primary coverage and that CHRPP trust agreement did not trigger an excess clause in the ISMIE policy. ISMIE timely filed its notice of appeal to this court.

# I

Initially, ISMIE contends that the trial court erred in allowing CHRPP to intervene and litigate an insurance coverage issue in a tort action. The purposes of intervention are to expedite litigation and to prevent a multiplicity of lawsuits. (*Serio v. Equitable Life Assurance* (1989), 184 Ill. App. 3d 432, 435, 540 N.E.2d 800, 802.) The decision to permit or deny intervention generally rests within the discretion of the trial court. See, *e.g.*, *Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 382, 415 N.E.2d 1034, 1038.

ISMIE argues that CHRPP should not have been allowed to intervene as an insurance company is never a necessary or proper party in an action against the insured. (*Valente v. Maida* (1960), 24 Ill. App. 2d 144, 150, 164 N.E.2d 538, 541; *Hurley v. Finley* (1955), 6 Ill. App. 2d 23, 27, 126 N.E.2d 513, 516.) CHRPP responds that *Hurley* was decided before the precursor to section 2—408 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—408) became effective in 1955, and that *Valente*, decided after 1955, merely cited *Hurley* without analyzing the effect of the new provision for

intervention. CHRPP contends that more recent cases have permitted intervention by insurers. (See, *e.g.*, *Johnson v. Cape Industries, Ltd.* (1981), 91 Ill. App. 3d 192, 195, 414 N.E.2d 470, 473.) ISMIE responds that the insurer in *Johnson* sought to intervene to stay a personal injury action pending the resolution of insurance issues in a separate declaratory judgment action. ISMIE notes that, unlike *Johnson*, the intervention here attempts to eliminate the need to file a separate declaratory judgment action.

In *Johnson*, the insurer that sought to intervene was apparently instructed not to appear on behalf of its insured, resulting in a default judgment against the insured. (See *Johnson*, 91 Ill. App. 3d at 193-94, 414 N.E.2d at 472.) This court indicated that the apparent difficulty between the putative insured and the insurer resulted in inadequate representation of the insurer's interest in a matter that may bind the insurer. (See *Johnson*, 91 Ill. App. 3d at 195-96, 414 N.E.2d at 473.) In this case, the record indicates that the insured's counsel, retained by ISMIE, showed no interest in settling the claims against Dr. Abadilla, whereas CHRPP appears to have been interested in settling the case. The tension between the interests involved may have been exacerbated when the insured's counsel, retained by ISMIE, determined that CHRPP was the primary insurer and ISMIE the excess insurer.

The traditional rule against intervention by insurers is based on the premise that a jury may be improperly influenced by knowledge of insurance issues. (See, *e.g.*, *Loeber Motors, Inc. v. Sims* (1975), 34 Ill. App. 3d 342, 351, 340 N.E.2d 132, 138.) In this case, as in *Johnson*, the purposes of intervention were fulfilled and the procedural posture of the case was such that a trial judge (not a jury) was able to consider the legal question of coverage separate and apart from the underlying tort action. Indeed, the coverage question in this case was decided by a judge other than the judge who supervised the underlying settlement. Consequently, this case may be one of those exceptional cases falling outside the general rule.

While not binding on this court, the decision of the Court of Appeals of Arizona in *McGough v. Insurance Co. of North America* (1984), 143 Ariz. 26, 691 P.2d 738, is persuasive authority on this point. In *McGough*, which was a wrongful death action arising from an airplane crash, the insurers of the aircraft owners and the pilot did not dispute which policy provided primary coverage, as the parties do in this case. However, the *McGough* court did conclude that the excess insurer should have been permitted to intervene to protect its interest where the counsel retained by the primary insurer entered an agreement that provided for payment of $1 million over the limit of the primary policy. The *McGough* court apparently accepted the

excess insurer's argument that the disposition of the case prevented it from protecting its interest in limiting the amount to be paid from its own policy in a matter where the rules of estoppel would bind the excess insurer.

*Johnson* and *McGough* are distinguishable from this case in one respect. Both *Johnson* and *McGough* are cases which concern whether the insurer's interest was being adequately represented in the disposition of a matter that may bind that insurer. These are the factors at issue when considering whether intervention as of right is proper under section 2—408(a). In this case, CHRPP moved to intervene pursuant to section 2—408(b), which governs permissive intervention. Section 2—408(b) is concerned with whether the intervenor's claim or defense shares common questions of law or fact with the underlying dispute. ISMIE argues that intervention was improper because no such common question existed. However, this court will not reverse a trial court's decision on permissive intervention where the applicant could have intervened as a matter of right. Thus, given the unusual circumstances of this case, we conclude that the trial court did not abuse its discretion in granting CHRPP leave to intervene.

## II

ISMIE also contends that the trial court erred in ruling that the ISMIE policy was primary insurance and the CHRPP trust agreement was excess insurance in this matter. The ISMIE policy provides in relevant part as follows:

"VII. CONDITIONS

\* \* \*

5. OTHER INSURANCE—The insurance provided by this policy is primary insurance, except when the *insured* has other valid and collectible insurance or other form of protection affording coverage or indemnity applicable to a loss covered by this policy, in which event this insurance shall be excess over such other valid and collectible insurance or other form of protection. When this insurance is primary and the *insured* has other insurance or other form of protection affording coverage or indemnity which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Exchange's liability under this policy shall not be reduced by the existence of such other insurance or other form of protection.

When both this insurance and other insurance or form of protection affording coverage or indemnity apply to the loss on the same basis, whether primary, excess or contingent, the Exchange shall not be liable under this policy for a greater proportion of the loss than stated in the applicable contribution provision below:

(a) Contribution by Equal Shares—If all of such other valid and collectible insurance or other form of protection affording coverage or indemnity provide for contribution by eqaul [*sic*] shares, the Exchange shall not be liable for a greater proportion of such loss than would be payable if each insurer or provider of protection contributes an equal share until the share of each insurer or provider of protection equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers or providers of protection then continue to contribute equal shares of the remaining amount of loss until each insurer or provider of protection has paid its limit in full or the full amount of the loss is paid.

(b) Contribution by Limits—If any of such other insurance or form of protection affording coverage or indemnity does not provide for contribution by equal shares, the Exchange shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability all valid and collectible insurance or form of protection against such loss." (Emphasis in original.)

The CHRPP trust agreement provides in relevant part as follows:

"4.3 If, with respect to losses and defense expenses covered hereunder, the Covered Person has other insurance, whether on a primary, excess or contingent basis, there shall be no coverage afforded hereunder; provided, however, that if the limit of liability of this Agreement is greater than that provided the Covered Person's other insurance ***, this Agreement shall afford excess coverage over and above such other insurance in an amount sufficient to give the Covered Person a total limit of liability equal to the limit of liability afforded by this Agreement. Nothing herein shall be construed to make this Agreement subject to the terms, conditions, and limitations of other insurance.

(a) If any court of competent jurisdiction shall determine that contributions from the Program shall be made concurrently with the proceeds of any insurance policy, the Program shall not be liable under this Agreement for a greater proportion of such Covered Loss than would be payable if the Program and each such insurer contributed an equal share until the full amount of the Covered Loss was paid or until the share of each such insurer and the Program equaled the lowest applicable limit of liability under either this Trust Agreement or any one insurance policy, and with respect to any amount of Covered Loss not so paid, the remaining insurers and the Program shall then continue to contribute equal shares of the remaining amount of Covered Loss until each such insurer or and Program has paid its limit in full or the full amount of the Covered Loss is paid."

The resolution of "other insurance" problems has been a difficult task in many jurisdictions, including Illinois. (*Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill. 2d 71, 75-76, 269 N.E.2d 97, 99.) In *Putnam*, our supreme court noted the types of "other insurance" clauses that generally tend to appear in insurance contracts—*pro rata*, excess and escape—also noting that combinations of clauses often appear in a single policy to address varying circumstances. (*Putnam*, 48 Ill. 2d at 76, 269 N.E.2d at 99-100.) After discussing the so-called "Oregon rule," in which the existence of "other insurance" clauses in different policies was almost always considered incompatible, resulting in proration of the liability between the insurers, the *Putnam* court adopted the majority rule, which seeks to reconcile "other insurance" provisions whenever possible to effectuate the intent of the parties. See *Putnam*, 48 Ill. 2d at 77-82, 269 N.E.2d at 100-02.

The trial court in this case relied on *Putnam* in determining that the ISMIE policy was primary and the CHRPP agreement excess. The *Putnam* opinion is quite helpful in disposing of this case, but must be read closely to dispose properly of this case. The *Putnam* court, discussing the majority rule it adopted, stated as follows:

> "Of the six possible combinations of the three basic clauses, three combinations find identical clauses in conflict. As noted earlier, in such situations it is generally held to be impossible to give effect to the intent of all parties, and thus identical clauses are deemed incompatible. Most cases do not involve identical clauses, however; when the conflict between clauses is escape v. excess, *pro rata* v. escape, or *pro rata* v. excess, as here, the majority of jurisdictions reconcile the conflict by giving effect to one clause and finding the other to be inapplicable. For instance, it is generally found that a policy conditioned by an excess clause, or an excess-escape clause, is not such 'other available insurance' as will activate the *pro-rata* clause of another policy \*\*\*." *Putnam*, 48 Ill. 2d at 80, 269 N.E.2d at 101.

This passage has three facets relevant to this appeal. First, it indicates that when two policies both contain the same sort of "other insurance" clause, the clauses will be deemed incompatible. Second, it indicates that our supreme court viewed an excess-escape clause as an excess clause, rather than an escape clause. Indeed, the supreme court characterized the excess-escape as excess despite the fact that the policy limits in both policies were the same. (*Putnam*, 48 Ill. 2d at 73, 269 N.E.2d at 98.) Third, it indicates that a policy conditioned by an excess-type clause is not "other insurance" that will activate an "other insurance" condition in another policy. We note that our

supreme court has also held that a policy conditioned by an excess clause is not "other insurance" that will trigger another primary policy's escape clause. *New Amsterdam Casualty Co. v. Certain Underwriters at Lloyd's* (1966), 34 Ill. 2d 424, 430, 216 N.E.2d 665, 668.

■ In this case, the ISMIE policy, while indicating that it is primary insurance in the absence of other insurance, is conditioned by an excess clause. The CHRPP policy does not explicitly state that it is primary insurance, but it is undisputed that it would be primary insurance in the absence of the ISMIE policy. Indeed, CHRPP explicitly notes in its argument that this is a case of "coincidental" coverage, where the court must determine which of two otherwise primary policies with "other insurance" clauses will provide excess coverage. (*E.g., Home Indemnity Co. v. General Accident Insurance Co.* (1991), 213 Ill. App. 3d 319, 323, 572 N.E.2d 962, 964.) The CHRPP agreement is conditioned by an excess-escape clause.

As noted by the parties in their briefs, there does not appear to be any precedent in Illinois addressing a conflict between a policy conditioned by an excess clause and one conditioned by an excess-escape clause. Yet *Putnam* suggests that an excess-escape clause is to be treated like an excess clause. *Putnam* indicates that policies conditioned by excess-type clauses are generally not "other insurance" that will trigger another policy's "other insurance" contingencies. Thus, in this case, the two contracts contain excess-type clauses that do not trigger corresponding conditions in each other. In short, both policies contain excess-type clauses that are incompatible with each other.

This conclusion is in accord with the authority of other jurisdictions cited by the parties. ISMIE cited *Fremont Indemnity Co. v. New England Reinsurance Co.* (1991), 168 Ariz. 476, 815 P.2d 403, in which the supreme court of Arizona held that an excess-escape clause was sufficiently incompatible with another policy's excess clause to warrant proration of liability. CHRPP cited *Underground Construction Co. v. Pacific Indemnity Co.* (1975), 40 Cal. App. 3d 62, 122 Cal. Rptr. 330, which involved policies with language quite similar to the language of the policies in this case. However, the California court believed that the *pro rata* provision in the policy with the excess clause was active. (*Underground Construction Co.*, 40 Cal. App. 3d at 69, 122 Cal. Rptr. at 334-35.) Such is not the case here.

In sum, we conclude that the ISMIE policy and the CHRPP agreement contain incompatible excess-type clauses. Both policies also contain provisions regarding the allocation of funds in cases where, as here, there is concurrent insurance, *i.e.*, when two policies apply to a loss on the same basis. Consequently, we reverse the

judgment of the circuit court of Cook County and remand the cause for a calculation of the respective liabilities of ISMIE and CHRPP in accordance with this opinion and the language of the contracts.

Reversed and remanded.

BUCKLEY and O'CONNOR, JJ., concur.