304

■■■■■

(No. 93-CC-0346–■■■■■■

STATE FARM FIRE AND CASUALTY CO., as SUBROGEE ROBERT R. REINERTSEN, Claimant, *v.* THE BOARD OF GOVERNORS OF STATE COLLEGES AND UNIVERSITIES, Respondent.

*Opinion filed December 22, 1997.*

HINSHAW & CULBERTSON (ROBERT M. BENNETT, of counsel), for Claimant.

JAMES E. RYAN, Attorney General (JAY SPENGLER, Assistant Attorney General, of counsel), for Respondent.

OPINION

EPSTEIN, J.

This court is rarely called upon to decide technical issues of insurance law such as this case presents. But with the State universities providing self-insurance and thus entering this field, we find ourselves embroiled in the kinds of arcane insurance issues that frequently occupy general jurisdiction courts.

This case is ultimately, but not technically, a dispute between two insurers over some of the defense costs of their common insured's defense of a libel action. Legally, this is a subrogation contract claim by State Farm Fire

and Casualty Company ("State Farm"), as subrogee of its insured, against the Board of Governors of State Colleges and Universities (the "BOG"), which operates a self-insurance program (the "BOG Program") that covered the same insured, Robert J. Reinertsen, who was a faculty member of Western Illinois University and was thus covered by the BOG Program.

The case is before the Court on the Claimant's motion for summary judgment, which the Respondent opposes as a matter of law. There are no disputed questions of material fact with respect to the issues argued by the parties.

## The Facts

Claimant State Farm issued a liability insurance policy to its insured, Robert R. Reinertsen. Reinertsen was also covered by the Respondent's self-insurance program. Professor Reinertsen was sued for slander.

State Farm initially assumed Reinertsen's defense under a reservation of rights, but later determined that its policy did not cover the slander claim. (Although State Farm's no-coverage determination was not judicially confirmed, it was, and is, undisputed.)

Reinertsen then turned to the BOG Program, which he had earlier informed of the slander suit. Based on the inapplicability of the State Farm policy and the lack of other insurance, Reinertsen's defense was then assumed by the BOG in accordance with the "other insurance" exclusion of its program (article VI, section B-4), which provided that,

"the Program does not apply * * * to * * * injury or * * * damage for which the insured has other valid and collectible insurance, unless such insurance is * * * specifically * * * excess."

State Farm brought this claim as subrogee of Reinertsen, seeking to recover from the BOG $6,827.13 of

attorney's fees and litigation expenses that State Farm spent on Reinertsen's defense of the slander action prior to its determination that its policy did not cover the claim.

## The Parties' Positions

The Claimant, State Farm, essentially contends (i) that the BOG had a contractual duty to Mr. Reinertsen under its program, both to defend him in his slander lawsuit, and to indemnify him against any resulting liability, (ii) that State Farm is legally subrogated to that right, at least to the extent of its payment of such defense expenses, (iii) that the BOG Program was the primary insurance coverage for the slander claim against Reinertsen, (iv) that, as the primary insurer of the underlying claim, the BOG's duty to defend Reinertsen supersedes the prior and lesser duty of State Farm to defend him.

The Respondent challenges the Claimant's characterization of the two insurance coverages. Respondent denies that its duty to defend was "primary" during the period when State Farm was defending. Respondent contends that during the pre-determination period the BOG coverage was only "excess" coverage, not "primary" coverage, because under the BOG Program's exclusion that program's coverage is excess unless it is determined that no other "valid and collectible insurance" applies. Respondent also challenges State Farm's right to reimbursement in the face of its own duty to defend. Finally, Respondent urges that public policy mandates that insurers be obliged to pay for their own obligations to defend their insureds lest that obligation be diluted. Respondent raises the specter of insurers seeking, and getting reimbursement of, defense expenditures from their insureds, when it turns out that the underlying coverage of the insured's policy does not reach the claim at hand.

Several of the pertinent legal propositions are undisputed here. State Farm acknowledges, as it must, that an insurer's duty to defend is broader than its duty to indemnify; (see, e.g., *Aetna Casualty & Surety Company v. Prestige Casualty Company* (1st Dist. 1990), 195 Ill. App. 3d 660, 553 N.E.2d 39; *LaSalle National Trust, N.A. v. Schaffner* (N.D. Ill. 1993), 818 F.Supp. 1161) and that it had a duty to defend under its policy despite its ultimate inapplicability, until a proper determination of non-coverage was made. For its part, the Respondent BOG does not dispute its parallel contractual duty to defend Mr. Reinertsen's slander claim or the general proposition of State Farm's right to stand in Mr. Reinertsen's shoes as his subrogee to assert this reimbursement/subrogation claim. And, as noted above, neither Reinertsen nor the BOG have disputed State Farm's non-coverage determination.

## Jurisdiction

Our jurisdiction over this claim is not challenged. We observe nonetheless that our jurisdiction here is founded on section 8(b) of the Court of Claims Act (705 ILCS 505/8(b)), which grants us jurisdiction over claims "founded upon any contract entered into with the State * * *" which encompasses the university systems. The parties agree that the underlying action here is predicated on enforcement of the BOG Program, which is a contract entered by the BOG with its employees such as Reinertsen. No issue of the validity of that contract or of the contractual undertakings therein is raised.

## Opinion on Liability

This defense cost reimbursement-subrogation issue is largely determined by the legal characterization of the two insurance coverages involved, but not quite as absolutely as the parties would have it. We commence by rejecting the starting analyses of both parties.

State Farm says that the reimbursement issue is entirely determined by the characterization of the BOG coverage of Reinertsen's slander claim as "primary" rather than "excess," as it urges us to find, and as we do find below. However, State Farm's liability analysis is slightly oversimplified. Other factors, including the status and character of its own policy coverage, may bear on the ultimate liability in some circumstances.

At the other analytical extreme, we must also reject the BOG's argument that reimbursement of State Farm is precluded as a matter of law due to State Farm's duty to defend Reinertsen (at that time) under its own policy, irrespective of how the two insurance coverages are characterized. We reject this analysis for lack of authoritative support and because it is based on two erroneous premises: first, that this is a contest between two "primary" insurance coverages, which it is not (rendering irrelevant or distinguishable the case law cited by the BOG and the primary-primary insurance cases cited by State Farm, *e.g.*, *Home Indemnity Company v. General Accident Insurance Company of America* (1st Dist. 1991), 213 Ill. App. 3d 319, 572 N.E.2d 962, 157 Ill. Dec. 962; and second, that this is a legal fight between two insurers, which is only indirectly and immaterially so.

This is a dispute between the insured and his primary insurer, with a second insurer standing in the insured's shoes as his subrogee. The sole basis of liability advanced in this case is the subrogation theory—which rests on the rights of the insured. No contribution or other theory is advanced. Our decision is thus limited to the insured's subrogated rights.

The issue presented is thus, whether or not the insured can recover, from his primary liability insurer, defense costs expended by him prior to the time the primary

insurer assumed the defense. It is immaterial that the costs were paid by a second insurer—at least where the second insurer is not a "primary" insurer, as we here conclude that State Farm was not. We find that State Farm was not a primary insurer for the elegantly simple reason that it was not an insurer of the subject slander claim at all, which is undisputed by the parties.[1]

On the other side of the fence, it seems clear that the BOG was a primary, rather than excess, insurer (*i.e.*, indemnitor) as to the slander claim against Reinertsen, based on the terms of its "other insurance" exclusion clause (article VI, section 4-B of the BOG Program, quoted above).

As our Courts have held, the "other insurance" exclusion clause in an insurance policy is the principal, and usually the sole, determinant of whether a particular insurance policy or coverage is primary or excess coverage (*Putnam v. New Amsterdam Casualty Company* (1970), 48 Ill. 2d 71, 269 N.E.2d 97), although arguably other contractual provisions of a policy may also be considered if relevant (the "entirety of the policy" approach) (*see, e.g., Illinois Emcasco Insurance Co. v. Continental Casualty Co.* (1st Dist. 1985), 139 Ill. App. 3d 130, 487 N.E.2d 110, 93 Ill. Dec. 666. In this case, the BOG Program's "other insurance" clause is a form of "excess" clause that renders the coverage excess where—but only where—"the insured has other valid and collectible insurance." In cases where this exclusion clause does not apply (so as to render the BOG coverage "excess"), it is clear that the BOG coverage is applicable as primary coverage in accordance with the

---

[1] We note in passing that if State Farm and the BOG Program had both been primary insurers of Reinertsen's slander claim, it is possible that an entirely different analysis, and other public policies underlying insurance law, might well apply. *See, Home Indemnity Company v. General Accident Insurance Company of America* (1st Dist. 1991), 213 Ill. App. 3d 319, 572 N.E.2d 962, 157 Ill. Dec. 962, and cases cited therein. We do not address that situation, nor do we express, a view as to whether subrogation is available in such circumstances for reimbursement between primary insurers.

terms of the program. In this instance, the BOG excess clause plainly is not triggered by the inapplicable State Farm policy, and no other insurance coverage has been suggested, leaving the BOG Program coverage as primary.

More critically, and as State Farm emphatically and correctly contends, its policy was *always* inapplicable to Reinertsen's slander claim. The State Farm policy did not suddenly become inapplicable only when State Farm made its later determination (or, in the more usual case, when a Court finally makes a declaratory judgment). While the State Farm policy surely imposed a duty to defend under Illinois insurance law, the obligation to defend is not the same as the obligation to indemnify. Indeed, it is broader. We conclude that the duty to defend under another policy, by itself, does not trigger the "other insurance" clause of the BOG Program. Accordingly, the BOG Program was Reinertsen's primary coverage of his slander claim from the outset, and was the only primary coverage applicable to Reinertsen's defense.

This takes the analysis to the point of decision. With the dispute now firmly characterized as insured-and-non-insuring subrogee (State Farm) versus primary insurer (BOG), with respect to the defense of a particular tort liability coverage, the Court concludes that the primary insurer is liable for defense expenditures that were advanced in good faith by the insured or by his subrogee. In the circumstances presented, State Farm as subrogee of Reinertsen can, and will, recover the disputed defense costs from the BOG.

We understand that there is no Illinois precedent directly on point; at least the parties and this Court have not found any. However, it is established case law that an excess insurer can recover advances from a primary insurer. *See,* discussion in *Home Indemnity Company v.*

*General Accident Insurance Company of America* (1st Dist. 1991), 213 Ill. App. 3d 319, 572 N.E.2d 962, at 965, 157 Ill. Dec. 498, at 501, citing *New Amsterdam Casualty Company v. Certain Underwriters at Lloyd's, London* (1966), 34 Ill. 2d 424, 216 N.E.2d 665; *Aetna Casualty & Surety Company v. Coronet Insurance Company* (1976), 44 Ill. App. 3d 744, 358 N.E.2d 914, 3 Ill. Dec. 371; *Fireman's Fund Indemnity Company v. Freeport Insurance Company* (1961), 30 Ill. App. 2d 744, 173 N.E.2d 543; *see also, Country Mutual Insurance Co. v. Anderson* (1993), 257 Ill. App. 3d 73, 628 N.E.2d 499, 195 Ill. Dec. 35; *Padilla v. Norwegian American Hospital* (1994), 266 Ill. App. 3d 829, 641 N.E.2d 572, 204 Ill. Dec. 348; *Sportmart v. Daisy Manufacturing Co.* (1994), 268 Ill. App. 3d 974, 645 N.E.2d 360, 206 Ill. Dec. 355.

We find no material distinction, for this purpose, between the status of an insurer as an "excess" insurer and as a "non-insurer" (i.e., an insurer with inapplicable coverage). In both postures, the insurer seeking to recover advanced-in-good-faith benefits (here State Farm) did not have a present duty to insure the underlying claim at the time the expenses were paid. The technical reasons why such a duty did not exist may differ—one is a dollar limit, whereas the other is a lack of substantive coverage—but the relevant result is identical: no present duty to insure. Without a present duty to insure, we find no basis for precluding application of the insurance subrogation right, as the BOG has urged us to do. Nothing in our analysis in any way detracts from the initial obligation to defend (even under an inapplicable policy), and our conclusion in no way undermines the rights of the insured.

We therefore find the foregoing authority that allows subrogation recovery by excess insurers from primary insurers can be applied (or extended) to allow subrogation

recovery from a primary insurer by an insurer who has an inapplicable policy issued to the same insured.

We also reject the two additional points advanced by the BOG as defenses to its liability for the disputed defense costs. First, the BOG complains about the delay in State Farm's determination that its policy did not cover the slander claim. No authority has been presented and no prejudice has been shown by the BOG that gives rise to any consequences of that delay. Second, the BOG attacks the adequacy and timeliness of Reinertsen's notice to it of the slander claim and lawsuit. However, such defects were waived by the Bog's acceptance of the defense and assumption of the primary insurance indemnity. *See, O'Brien v. Country Mutual Insurance Company* (1st Dist. 1969), 105 Ill. App. 2d 21, 245 N.E.2d 30.

Conclusion and Order

For the foregoing reasons, we find the BOG Program is liable for reimbursing State Farm, as Reinertsen's subrogee, for the sum of $6,827.13 expended as defense costs properly payable by the BOG as the primary insurer of Reinertsen's slander claim. For this reason, Claimant is entitled to judgment as a matter of law, and we grant Claimant's motion.

It is hereby ordered: (1) Summary judgment is entered for the Claimant and against the Respondent; (2) Claimant is awarded $6,827.13 against the Board of Governors of State Colleges and Universities in full and final satisfaction of this claim.