OHIO GOVERNMENT RISK MANAGEMENT PLAN et al., Appellees,

v.

COUNTY RISK SHARING AUTHORITY, INC., Appellant.

[Cite as *Ohio Govt. Risk Mgt. Plan v. Cty. Risk Sharing Auth., Inc.* (1998), 130 Ohio App.3d 174.]

Court of Appeals of Ohio,
Sixth District, Fulton County.

No. F–98–001.

Decided Sept. 30, 1998.

*Michael G. Sanderson,* for appellees.

*Donald E. Theis,* for appellant.

---

KNEPPER, Judge.

This is an appeal from the judgment of the Fulton County Court of Common Pleas granting appellees, Ohio Government Risk Management Plan ("OGRMP") and the city of Wauseon ("Wauseon"), summary judgment on their declaratory judgment action against County Risk Sharing Authority ("CORSA"). For the reasons that follow, we affirm the decision of the trial court.

On March 26, 1996, appellees filed a complaint for declaratory judgment and breach of contract against CORSA. This complaint arose out of a dispute between the parties concerning coverage for an accident that occurred on May 17, 1993 ("the underlying litigation"). OGRMP and Wauseon demanded that CORSA undertake the defense of the underlying litigation and provide coverage to Wauseon.

The relevant facts are necessary to understand the relationship between the parties. On May 17, 1993, Marsha Demaline, an employee of Wauseon, was operating an EMS vehicle that was titled with Fulton County. Demaline was a certified EMT–A, emergency medical ambulance technician. In accordance with a written agreement between Wauseon and Clinton Township, Demaline was responding to an emergency injury accident in Clinton Township. While on this call, Demaline was in an accident with an automobile driven by Mildred Sanders and occupied by Blaine Sanders, Mildred's husband. The underlying litigation was filed on December 3, 1993 by Christina S. Schwarzbek, executor of the estate of Mildred and Blaine Sanders against the Fulton County Board of Commissioners and Wauseon, alleging negligence based on the doctrine of *respondeat superior. Schwarzbek v. Fulton Cty. Bd. of Commrs.,* Fulton C.P. No. 93–CV–236.

Fulton County was a participant and member of the CORSA. CORSA is a joint self-insurance pool, composed of a number of participating counties, formed "to provide for the payment of judgments, settlement of claims, expense, loss, and damage that arises, or is claimed to have arisen, from an act or omission of the political subdivision or any of its employees in connection with a governmental or proprietary function and to indemnify or hold harmless the subdivision's employees against such loss or damage." R.C. 2744.081.

Wauseon was a member of OGRMP, which provided the city coverage. Although CORSA disputes that OGRMP was also a member of a self-insurance pool, the membership agreement between OGRMP and Wauseon clearly stated that OGRMP "is created and organized * * * as authorized by Section 2744.081

of the Ohio Revised Code." OGRMP consists primarily of municipalities and townships with populations of less than fifty thousand.

Appellees claim to have demanded a defense and coverage from CORSA with respect to the underlying litigation. CORSA, however, asserts that it was not obligated to defend Wauseon or provide coverage because Wauseon was not an assured, Wauseon's coverage for the incident was primary, and that Wauseon failed to provide adequate notice to CORSA of its demand for a defense and coverage. Therefore, CORSA did not defend Wauseon in the original trial of the underlying litigation, conducted in the fall of 1995. Wauseon prevailed at trial; however, the verdict was overturned on appeal. *Schwarzbek v. Wauseon* (1996), 113 Ohio App.3d 631, 681 N.E.2d 986. CORSA also did not defend Wauseon at the second trial, held in March 1997. The verdict for the plaintiffs in the second trial was overturned by a judgment notwithstanding the verdict. We subsequently affirmed this defense judgment. *Schwarzbek v. Wauseon* (1998), 125 Ohio App.3d 736, 709 N.E.2d 570.

On October 21, 1997, appellees filed a motion for summary judgment and, on October 23, 1997, CORSA filed its motion for summary judgment. The trial court considered three issues in its decision: (1) whether CORSA should be analogized to insurance, (2) if yes, then which company provided primary coverage, and (3) whether CORSA received sufficient and legal "notice" of the underlying litigation.

Following oral arguments, held on December 5, 1997, the trial court granted judgment in favor of appellees on their declaratory judgment action on December 10, 1997. The trial court found that CORSA was to be considered as an "insurance" entity, and that under general insurance law principles, the liability follows the vehicle, which is insured by CORSA. The trial court also found that OGRMP's endorsement, stating that OGRMP had a duty to defend any suit against its insured, did not obviate CORSA's duty to defend Wauseon, as CORSA's coverage was primary. The trial court also found that CORSA received actual and proper "notice" of the underlying litigation. The trial court based its finding on the fact that Rodger Upton, the independent adjuster who first investigated the claim for OGRMP, spoke with Donald Cambert, an employee of Willis Corroon Administrative Services ("Willis Corroon"), regarding the underlying litigation in December 1993. Willis Corroon was a third-party administrator that handled claims involving CORSA member counties. The trial court found that based on Upton's affidavit concerning his conversation with Willis Corroon, CORSA received notice. On December 22, 1997, the trial court amended its judgment to include Civ.R. 54(B) language to enable the parties to appeal immediately.

CORSA timely appealed and raised the following assignments of error:

"Assignment of Error No. 1

"The trial court erred in determining that CORSA is an insurance entity and that the benefits and protection the CORSA program provides to member counties constitute insurance.

"Assignment of Error No. 2

"The trial court erred in determining that CORSA's 'coverage' to Fulton County is primary to the insurance policy OGRMP issued to the city of Wauseon.

"Assignment of Error No. 3

"The trial court erred in failing to review the OGRMP insurance policy to determine if it also applied on a primary basis.

"Assignment of Error No. 4

"The trial court erred in determining that CORSA received adequate notice of this claim as it concerned the city to constitute a duty to defend the city.

"Assignment of Error No. 5

"The trial court erred in failing to find that OGRMP had waived or was estopped from asserting that CORSA had a duty to defend and indemnify the city."

This court notes at the outset that in reviewing a summary judgment, we must apply the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

In its first assignment of error, CORSA argues that the trial court erred in treating its self-insurance pool as an entity similar to insurance. CORSA argued in its motion for summary judgment that CORSA was formed pursuant to R.C. 2744.081 solely for the purpose of providing for the payment of judgments, settlement of claims, expense, loss, and damage that may arise from an act or omission of Fulton County, or any other participating county, or any employees of member counties, not for Wauseon. CORSA also argued that according to R.C. 2744.081(E)(2), a joint self-insurance pool is not insurance and is not subject to Ohio's insurance laws:

"A joint self-insurance pool is not an insurance company. Its operation does not constitute doing insurance business and is not subject to the insurance laws of this state."

CORSA further argued in its motion that other districts held that self-insurance programs were not "insurance." See *Physicians Ins. Co. v. Grandview Hosp. & Med. Ctr.* (1988), 44 Ohio App.3d 157, 542 N.E.2d 706; *Fairfield Cty. v. Allstate Ins. Co.* (July 24, 1992), Franklin C.P. No. 91CVH02–1112, unreported; *Adams v. Thomson Newspapers, Inc.* (Nov. 25, 1996), Scioto App. No. 95CA2357, unreported, 1996 WL 689128.

In response, appellees argued that CORSA's benefits provided to its members are essentially in the nature of insurance, citing *Williams Cty. Bd. of Commrs. v. Springfield Twp.* (1995), 107 Ohio App.3d 780, 669 N.E.2d 519. Therefore, the determination to be made is whether CORSA's or OGRMP's coverage should be applied first to the underlying litigation.

Pursuant to R.C. 2744.081, as a joint self-insurance pool, CORSA is not an insurance company and its operation does not constitute doing an insurance business. Nevertheless, CORSA is, in essence, a statutory insurance scheme which allows a county to spread the risk of its own loss among other counties that have all paid premiums into the fund. *Id.,* 107 Ohio App.3d at 783, 669 N.E.2d at 521, fn. 2.

■ We agree that CORSA is clearly not subject to the insurance laws of this state, as held by *Adams, supra,* which found that CORSA did not have to comply with R.C. 3937.18, the uninsured/underinsured motorist insurance statute. However, CORSA's self-insurance pool is undoubtedly akin to insurance, in that its terms of coverage are derived from an insurance policy and, in exchange for a premium, CORSA agrees to indemnify its assureds for loss or damage from stated causes in a definite or ascertainable amount. See *State ex rel. Herbert v. Std. Oil Co.* (1941), 138 Ohio St. 376, 20 O.O. 460, 35 N.E.2d 437, paragraph one of the syllabus.

This holding is not in conflict with *Grandview, supra,* because we are not finding that self-insurance is insurance; rather, we find that its structure is analogous to insurance. Therefore, we find that the trial court did not err in applying well-settled principles of law concerning coverage issues when determining whether Wauseon was covered by CORSA's policy and whether OGRMP's or CORSA's coverage was primary. Accordingly, we find CORSA's first assignment of error not well taken.

CORSA's second and third assignments of error are related. CORSA asserts in its second assignment of error that the trial court erred in determining that its coverage was primary to OGRMP's coverage. In its third assignment of error, CORSA argues that the trial court failed to consider OGRMP's policy to determine if it was also primary.

CORSA argues that OGRMP's policy contains a Governmental Medical Services Professional Liability endorsement that includes the EMS operator as an insured and broadly defines "medical incident" to include the accident in the underlying litigation. OGRMP's policy states that coverage is provided for medical incidents. A "medical incident" is defined as:

"any act or omission in the furnishing or failure to furnish professional medical services by the insured or any person acting under the personal direction, control or supervision of the *insured.*

"Any such act or omission together with all related acts or omissions in the furnishing of such services to any one person shall be considered one *medical incident.*" (Emphasis *sic.*)

CORSA asserts that this policy language is ambiguous and does not exclude any act or omission from the attendant act of transportation to and from an emergency. Additionally, CORSA argues that Demaline was performing an emergency medical service when she drove the ambulance. Accordingly, CORSA argues that the accident is covered by OGRMP's policy.

CORSA also argues that OGRMP's policy is primary because of OGRMP's "other insurance" clause, which states:

"The insurance afforded by this endorsement shall be excess insurance over any other valid and collectible insurance available to the insured."

CORSA argues that because it is not insurance, it cannot be "other insurance" and, therefore, OGRMP'S policy is primary.

CORSA further argues that, pursuant to R.C. 2744.07(A)(1), Wauseon has a statutory duty to defend and indemnify its employees. Therefore, OGRMP is required to provide a defense and coverage for both Demaline's actions and Wauseon's.

Alternatively, CORSA argues in its third assignment of error that, even if CORSA's coverage is primary, OGRMP's policy is also primary and, therefore, the coverages should be applied on a *pro rata* basis.

Appellees argue that CORSA's coverage is primary because "[b]y the clear terms of the controlling document for CORSA's coverage, the Lloyd's policy, Wauseon is thus entitled to coverage." Appellees also argue that OGRMP's coverage is not primary because (1) the Governmental Medical Services Professional Liability endorsement does not pertain to negligence with transportation, and (2) its "other insurance" clause makes OGRMP's coverage excess over CORSA's coverage.

■ Prior to deciding whether CORSA's or OGRMP's coverage is primary, we must determine whether CORSA even provides coverage to Wauseon. CORSA

and Fulton County entered into a "participation agreement" that was in effect at the time of the underlying litigation. The intent of the county by entering into the participation agreement was "to join with other counties as members of CORSA, which [was to] administer a joint self-insurance pool and use funds contributed by the members to defend and indemnify * * * any member of CORSA against stated liability or loss." Section IV of the participation agreement states that CORSA's obligations include the following: "To provide the coverages shown on Exhibit A." Exhibit A, attached to the participation agreement, states that it is a "Summary of Coverages" and provides that "Automobile Fleet Liability" is one of the items of coverage. Exhibit A also states: "Note: *Please check your* 'Certificate of Insurance' plus *sample policy for full details of coverages and exclusions.*" (Emphasis added.)

According to David W. Brooks, administrator of CORSA, "The 'sample policy' referred to in Exhibit A to the Participation Agreement * * * is an earlier version of the indemnity policy issued to CORSA by Underwriters at Lloyds." Brooks, however, stated:

"CORSA is not dependent or subject to either the Lloyds or Northland policies but merely use them as a guide or rule of thumb. CORSA is not 'bound' to any provision in these polices, but has the freedom and flexibility to accept claims CORSA deems appropriate to handle, including claims CORSA knows will not likely be reimbursed by Lloyds or Northland."

Notwithstanding Brooks's statement that CORSA is not "bound" by the Lloyds policy language, the agreement between the parties incorporates the sample policy and clearly states that the assured is to refer to the sample policy for full details of coverages and exclusions.

In addition to Brooks's affidavit testimony, Donald Cambert and Gregory Gilliam identified Exhibit 2, attached to their depositions, as portions of the Lloyds policy that should be referred to when determining the terms and conditions of CORSA's coverage. In Section III of the Insuring Agreements, Automobile Liability, the policy states:

"A—AUTOMOBILE LIABILITY: Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law or assumed by the Assured under contract or agreement, for damages direct or consequential, and expenses, all as more fully defined by the term 'ultimate net loss', in respect of a claim which is first made against the Assured during the period of this policy arising out of any occurrence on account of bodily injury including death at any time resulting therefrom, suffered or alleged to have been suffered by any person or persons (excepting employees of the Assured injured in the course of their employment), and/or

damage to or destruction of property or the loss of use thereof, arising out of the ownership, maintenance or use of any automobile."

The "General Insuring Agreements" section of the policy defines who is an assured. The policy states that the word "Assured," wherever used, includes not only the "Named Assured," CORSA, but also:

"2. under Section III any person while using an owned automobile or a hired automobile, *and any* person or *organization legally responsible for the use thereof,* provided the actual use of the automobile is by the Named Assured or with his permission * * *."

There is no dispute that Demaline was using Fulton County's ambulance with its permission. Additionally, because Wauseon was Demaline's employer, under the theory of *respondeat superior,* Wauseon was legally responsible for the use of the ambulance. Accordingly, we find that CORSA owed Wauseon a duty to defend and cover any losses suffered by Wauseon as a result of any liability arising out of the use of the ambulance owned by Fulton County and driven by Wauseon's employee.

■ CORSA argues, however, that OGRMP's "Governmental Medical Services Professional Liability Endorsement" provides primary coverage for the accident giving rise to the underlying litigation. We find, however, that the unambiguous policy language provides for coverage of injuries arising out of a medical incident, *i.e.,* "any act or omission in the furnishing or failure to furnish professional medical services by the insured or any person acting under the personal direction, control or supervision of the insured." Demaline was not providing professional medical services to the Sanders when she was involved in the accident that caused their injuries. Therefore, the "Governmental Medical Services Professional Liability Endorsement" does not apply to the underlying litigation.

■ Assuming, however, that Wauseon is covered by OGRMP's policy through an endorsement entitled "SMP Hired Automobile and Non–Owned Automobile Liability Endorsement," the issue becomes whether OGRMP's or CORSA's coverage is primary. Both policies contain an "other insurance" provision; however, based on *Grandview,* 44 Ohio App.3d 157, 542 N.E.2d 706, neither CORSA or OGRMP are considered "other insurance" for purposes of determining primary coverage because both are formed pursuant to R.C. 2744.081.

■ Since the policy language does not assist us with our issue, we turn to well-settled principles of law to determine which policy is primary. Where there are two policies covering the same incident, the owner's policy and the driver's policy, the rule of thumb is that the insurance on the car is primary and the driver's coverage is excess. In other words, "insurance follows the car." *Motor-*

*ists Mut. Ins. Co. v. Lumbermens Mut. Ins. Co.* (1965), 1 Ohio St.2d 105, 107, 30 O.O.2d 428, 429, 205 N.E.2d 67, 68–69. Accordingly, we find that CORSA's coverage is primary.

We additionally note that CORSA accurately argues that Wauseon is statutorily obligated, pursuant to R.C. 2744.07(A)(1), to provide a defense for its employees. Demaline, however, was never sued in the underlying litigation and, regardless, that fact is irrelevant to whether OGRMP must provide coverage to Wauseon for the accident.

Finally, CORSA asserts that, even if CORSA's coverage is primary, OGRMP's policy is also primary and, therefore, the coverages should be applied on a *pro rata* basis. We find no basis for this argument and find it not well taken.

Accordingly, we find that there are no genuine issues of material fact and that reasonable minds could only conclude that appellees were entitled to summary judgment. Accordingly, we find CORSA's second and third assignments of error not well taken.

■  CORSA argues in its fourth assignment of error that the trial court erred in determining that CORSA received adequate notice from Wauseon. Specifically, CORSA asserts that Willis Corroon is a separate and distinct entity from CORSA. Therefore, any calls placed to Willis Corroon Administrative Services could not be considered to be notice to CORSA of a pending claim. We find this argument to be without merit.

Roger Upton stated in his affidavit that on behalf of Wauseon, he contacted Donald Cambert of Willis Corroon on December 8, 1993. Upton testified that Donald Cambert informed him of the general limits of coverage for Fulton County and read to him the definition of "insured." Upton also testified that Cambert told him that "CORSA would defend the driver and the Fulton County Commissioners and any other entities which might be sued." When asked if that included Wauseon, Cambert responded that he would have to see the complaint to make that determination. Shortly thereafter, Upton sent Cambert a copy of the complaint, filed December 3, 1993. Upton further testified that he called Cambert back to confirm that he had received a copy of the complaint and stated that "from that conversation, [I] found no reason to believe that CORSA would not defend Wauseon."

According to Gregory Gilliam, claims manager for Willis Corroon, as a third-party administrator for CORSA, Willis Corroon's representatives had the authority to make determinations as to coverage, adjust claims, establish reserves, make determinations of coverage where multiple parties were involved, and decide issues of primary versus secondary coverage. Therefore, we find that Willis Corroon clearly had the responsibility of assessing and handling CORSA's claims and held itself out to Upton as having the authority to do so.

Moreover, the Insuring Agreements contained in the Lloyds policy, incorporated by reference into the participation agreement, states that an assured must immediately notify the underwriters through Corroon and Black Management, Inc. (Willis Corroon's former name) of any occurrence. Based on this clause and the apparent authority Willis Corroon possessed, we find that Willis Corroon was the proper entity to notify regarding Wauseon's claim for coverage.

In addition to Upton's conversation with Cambert, we find that, based on the deposition testimony of Gregory Gilliam, it is clear that Willis Corroon was aware that Wauseon sought coverage. Hylant Administrative Services (administrator for OGRMP) notified Willis Corroon on September 11, 1995, by letter, that it demanded a defense for Wauseon by CORSA. Gilliam testified that he did not report this demand because CORSA was "already aware of the disputes" as CORSA had asked questions numerous times about which coverage was primary and which was excess. Gilliam's testimony demonstrates that CORSA was aware that its coverage was potentially primary and, therefore, it would be required to defend Wauseon.

We therefore find that, based on Upton's conversation with Cambert, CORSA was on notice that Wauseon sought coverage through CORSA's policy with Fulton County. Accordingly, CORSA's fourth assignment of error is also found not well taken.

In its fifth assignment of error, CORSA asserts that the trial court erred in failing to find OGRMP had waived or was estopped from asserting CORSA had a duty to defend and indemnify Wauseon. Specifically, CORSA argues that Wauseon waived any right it may have had to coverage by hiring its own counsel, proceeding with its own defense, and by delaying nearly twenty months before demanding that CORSA provide it a defense.

We find that CORSA failed to demonstrate that Wauseon voluntarily relinquished a known right. See *Chubb v. Ohio Bur. of Worker's Comp.* (1998), 81 Ohio St.3d 275, 278–279, 690 N.E.2d 1267, 1269–1270. Based on our consideration of CORSA's fourth assignment of error, we found that CORSA was on notice that Wauseon expected a defense. CORSA cannot now prevail with an argument that Wauseon should have continually persisted with its demand for coverage and that its failure to do so constituted a waiver of rights. Any disadvantage CORSA was placed in with respect to Wauseon's defense was of its own making. Accordingly, we find CORSA's fifth assignment of error not well taken.

*Judgment affirmed.*

HANDWORK, P.J., and GLASSER, J., concur.