CHICAGO HOSPITAL RISK POOLING PROGRAM, Plaintiff and Counter-defendant-Appellee, v. ILLINOIS STATE MEDICAL INTER-INSURANCE EXCHANGE, Defendant and Counterplaintiff-Appellant.

First District (4th Division)   Nos. 1—99—3507, 1—99—3508 cons.

Opinion filed September 27, 2001.

QUINN, J., specially concurring.

Clausen Miller P.C., of Chicago (Robert L. Reifenberg, Edward M. Kay, and Barbara I. Michaelides, of counsel), for appellant.

Meckler, Bulger & Tilson, of Chicago (Michael M. Marick and Hallie Miller Fahey, of counsel), for appellee.

JUSTICE THEIS delivered the opinion of the court:

The Chicago Hospital Risk Pooling Program (CHRPP) brought an action against defendant, the Illinois State Medical Inter-Insurance Exchange (ISMIE), under theories of equitable contribution, unjust enrichment, and *quantum meruit* to recover one-half of a settlement payment it made on behalf of a physician covered by both CHRPP and ISMIE. ISMIE filed an affirmative defense, alleging, *inter alia*, that CHRPP's contribution claim was barred by the physician's selective tender of his claim to CHRPP. The trial court rejected ISMIE's argument, holding that the selective tender rule applied only to traditional insurance companies and did not apply to a self-insured risk-pooling trust. Thereafter, ISMIE filed a motion to dismiss the complaint pursuant to section 2—615 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2—615 (West 1998)), alleging that as a risk-pooling

trust CHRPP lacked the necessary elements to state a cause of action for equitable contribution. The trial court denied ISMIE's motion but certified the following questions of law for review under Illinois Supreme Court Rule 308 for interlocutory appeal. 155 Ill. 2d R. 308.

> "1. Whether the 'selective tender' rule of *Institute of London Underwriters v. Hartford Fire Ins. Co.*, 234 Ill. App. 3d 70, 599 N.E.2d 1311 (1st Dist. 1992), and its progeny can be applied to the Plaintiff in this case, [CHRPP], which is a self-insurance retention trust established under the Illinois Religious and Charitable Risk Pooling Trust Act; and

> 2. Whether [CHRPP], a self-insurance retention trust established pursuant to the Illinois Religious And Charitable Risk Pooling Trust Act, may state a cause of action for equitable contribution, unjust enrichment, or quantum meruit against [ISMIE], an insurance company, to recover one-half of a settlement payment that [CHRPP] made on behalf of a physician covered by [ISMIE] and [CHRPP]."

We answer the certified questions as follows and remand for further proceedings consistent with this opinion.

BACKGROUND

In September 1993, Luz Rivera filed a medical malpractice action against Norwegian-American Hospital, Dr. Ha Nguyen, Dr. Carlos Baldoceda, and her private obstetrician, alleging that they were negligent in delivering her twin sons, causing the death of one and the brain damage of the other. Dr. Baldoceda was insured under a professional liability policy issued by ISMIE. He was also covered under CHRPP as an employed physician of the hospital. CHRPP administers a trust established pursuant to the Religious and Charitable Risk Pooling Trust Act (the Risk Pooling Act or Act) (215 ILCS 150/1 *et seq.* (West 1998)), whereby participating nonprofit hospitals pool certain risks associated with the care and treatment provided to their patients. Under the CHRPP trust agreement (the Trust Agreement), participating hospitals are required to contribute certain sums to CHRPP in consideration of CHRPP's promise to pay judgments or settlements in response to medical malpractice suits against the participating hospital or other "Covered Persons," which include hospital employees while acting within the scope of their employment.

ISMIE agreed to defend Dr. Baldoceda with respect to the Rivera action. CHRPP declined Dr. Baldoceda's request for a defense under a reservation of rights and claimed that ISMIE had the primary obligation to defend and indemnify him with respect to liability arising out of the Rivera action. However, despite refusing Dr. Baldoceda's tender

of the claim, CHRPP settled the Rivera action for $3 million. The settlement reflected that $1 million was paid on behalf of Dr. Baldoceda. ISMIE did not participate in settlement negotiations.

Thereafter, CHRPP sought half of the settlement costs from ISMIE under theories of equitable contribution, unjust enrichment, and *quantum meruit* based on the court's holding in *Padilla v. Norwegian-American Hospital, Inc.*, 266 Ill. App. 3d 829, 641 N.E.2d 572 (1994). Therein, the court found that, where ISMIE and CHRPP had coincidental coverage obligations to the same physician and where their "other insurance" clauses were deemed incompatible, the liability for a judgment or settlement was owed equally.[1] The "other insurance" clauses construed in *Padilla* are identical to those at issue in this case.

■ ISMIE set forth its affirmative defenses to the complaint, including that the action for equitable contribution was defeated by the "selective tender" rule as expressed in *Institute of London Underwriters v. Hartford Fire Insurance Co.*, 234 Ill. App. 3d 70, 599 N.E.2d 1311 (1992), and its progeny. Under the rule, where two policies potentially apply to the same loss, the insured may choose to forego coverage under one policy, thereby foreclosing the targeted insurer from obtaining contribution from the nontargeted insurer. ISMIE alleged that, pursuant to the holding in *Institute*, Dr. Baldoceda exercised his right to tender the defense and indemnity obligation for the Rivera action to CHRPP under the Trust Agreement, and elected not to trigger the defense and indemnity obligations of ISMIE. Accordingly, it alleged that CHRPP could not obtain contribution from ISMIE for its settlement of the Rivera action. In addition, ISMIE filed a counterclaim seeking to recoup the costs it incurred in defending Dr. Baldoceda.

CHRPP responded that ISMIE could not rely on the "selective tender" rule because the rule only applied to traditional insurance companies and that CHRPP was not an insurance company but, rather, a trust. CHRPP claimed that applying the rule to the trust would violate the purpose of the Risk Pooling Act, to minimize the amount of money nonprofit hospitals spend on protecting themselves from the risks of financial loss due to their liabilities (215 ILCS 150/2 (West 1998)), and would undermine its function to provide a public health benefit. CHRPP also argued that the "selective tender" rule could not apply to it because the rule presumes a duty to defend and its Trust Agreement does not obligate it to defend Dr. Baldoceda.

---

[1]The *Padilla* court did not specifically order an equal sharing of the settlement costs. However, on remand the contract was interpreted to require ISMIE to reimburse CHRPP for 50% of the settlement costs.

Lastly, CHRPP argued that Dr. Baldoceda did not "unequivocally" renounce his coverage under his ISMIE policy in order to exclusively trigger the coverage obligations of CHRPP.

The trial court found that the "selective tender" rule was not applicable to a trust established under the Risk Pooling Act. The court examined the language of the Act which states that trusts formed pursuant to the Act are not to be considered insurance companies or to be in the business of insurance nor are they to be subject to regulation under the Illinois Insurance Code except as specifically provided. 215 ILCS 150/25 (West 1998). Based upon the plain language of the Act, the court concluded that CHRPP was not intended to be treated as insurance and strictly construed the selective tender rule as only applying to traditionally constituted insurance companies. The court held that to hold otherwise would "undermine the legislative intent that the trusts *** operate for the benefit of the participating hospitals and would be contrary to the public policy of the [S]tate of Illinois, as enunciated in the Act, that a trust such as CHRPP should not be considered an insurance company or in the business of insurance."

Thereafter, ISMIE filed a motion to dismiss the complaint, arguing, in part, that the reasons underlying the court's refusal to treat CHRPP as an insurance company for purposes of the "selective tender" rule also dictated that CHRPP could not seek equitable contribution. Specifically, ISMIE argued that the remedy of equitable contribution is available only to insurers that insure on the same basis and that there must be identity between the policies as to parties, insurable interests and risks. Since CHRPP, not being an insurance company, lacked the identity of insurable interests necessary to obtain such a remedy, it could not maintain its cause of action. The trial court denied ISMIE's motion, finding that CHRPP was entitled to the equitable remedies it sought from ISMIE.

Subsequently, the trial court granted a joint motion for interlocutory appeal under Supreme Court Rule 308 (155 Ill. 2d R. 308), finding that the rulings involved questions of first impression under Illinois law and a substantial ground for difference of opinion.

ANALYSIS

■ Before answering the certified questions, we review some general principles of insurance law necessary to an understanding of this case. Ordinarily, where an insured has concurrent coverage for the same liability, both of its insurers are obligated to provide coverage under the terms of their respective policies and their coverage obligations are then coordinated, typically by reference to the policies' "other insurance" provisions. These clauses take many forms, but generally

provide that, where there is other insurance available to cover the claim, the loss will be apportioned according to various formulas in order to limit each insurer's potential obligation to the insured. See, *e.g.*, *Padilla*, 266 Ill. App. 3d 829, 641 N.E.2d 572.

■ However, "other insurance" clauses only affect insurers' rights among themselves; they do not affect the insured's right to recovery under each concurrent policy (*Zurich Insurance Co. v. Raymark Industries, Inc*, 145 Ill. App. 3d 175, 199, 494 N.E.2d 634, 650 (1986)), nor do they affect the insured's right to selectively tender a claim to one insurer alone. Under the "selective tender" rule, an insured has the paramount right to choose or knowingly forgo an insurer's participation in a claim. *John Burns Construction Co. v. Indiana Insurance Co.*, 189 Ill. 2d 570, 727 N.E.2d 211 (2000).

In *Burns*, a construction company hired a subcontractor to pave a parking lot. The subcontract agreement required the subcontractor to name the construction company as an additional insured on its policy in addition to the construction company's own insurance coverage. After the paving was completed, a commuter was injured in the parking lot and sued the construction company. The company notified the subcontractor of the lawsuit and requested that its insurer defend and indemnify it. The subcontractor's insurer rejected the tender of the claim and later sought a declaration that both insurance policies were obligated to contribute equally to the claim based on the policies' "other insurance" clauses, notwithstanding the insured's election of coverage. *Burns*, 189 Ill. 2d at 571-72, 727 N.E.2d at 213-14.

The supreme court held that an insured has the exclusive right to determine whether to trigger coverage under an available policy by allowing the insured to make a "selective tender" of its claim to one of several potential insurers, irrespective of the presence of an "other insurance" clause. The targeted insurer has the sole responsibility to defend and indemnify the insured, thereby foreclosing a claim for equitable contribution from the excluded insurer. *Burns*, 189 Ill. 2d at 578, 727 N.E.2d at 217. An insurer does not have the right to trigger the insured's coverage under another policy in contravention of his wishes. Otherwise, the policy becomes, in effect, a third-party beneficiary contract entered into by the insured for the direct benefit of other insurers. *Bituminous Casualty Corp. v. Royal Insurance Co. of America*, 301 Ill. App. 3d 720, 726, 704 N.E.2d 74, 79 (1998). See also *Cincinnati Cos. v. West American Insurance Co.*, 183 Ill. 2d 317, 701 N.E.2d 499 (1998); *Richard Marker Associates v. Pekin Insurance Co.*, 318 Ill. App. 3d 1137, 743 N.E.2d 1078 (2001); *Alcan United, Inc. v. West Bend Mutual Insurance Co.*, 303 Ill. App. 3d 72, 707 N.E. 687 (1999).

Does Selective Tender Apply to CHRPP?

■ ■ With these principles in mind, we turn to an analysis of the questions before us. The scope of our review pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308) is strictly limited to the questions certified by the trial court. *Klak v. Skellion,* 317 Ill. App. 3d 1092, 1094, 741 N.E.2d 288, 290 (2000). In the first certified question, we are asked to decide whether the nature of this particular risk-pooling trust requires that it be treated differently than a traditional insurance company for purposes of applying the "selective tender" rule. As stated previously, unlike a traditional insurer, CHRPP administers a trust established pursuant to the Risk Pooling Act whereby participating nonprofit hospitals pool certain risks associated with the care and treatment provided to their patients. As part of a broad category of "self-insurance," this type of program has been described in many jurisdictions as both the "antithesis" of insurance and the "functional equivalent" to insurance, depending upon the nature of the analysis and the particular facts and circumstances of each case. Compare, *e.g., State v. Continental Casualty Co.,* 126 Idaho 178, 183, 879 P.2d 1111, 1116 (1994) (because self-insurance does not involve a transfer of the risk of loss, it is not insurance), with *Ohio Government Risk Management Plan v. County Risk Sharing Authority, Inc.,* 130 Ohio App. 3d 174, 180, 719 N.E.2d 992, 996 (1998) (structure of risk-sharing authority analogous to insurance); *Hillegass v. Landwehr,* 176 Wis. 2d 76, 81-82, 499 N.W.2d 652, 654-55 (1993) (self-insurance is a form of insurance).

In the past, CHRPP and ISMIE have looked to their respective "other insurance" clauses to apportion liability between themselves as they did in *Padilla.* However, in the present case, ISMIE alleges that Dr. Baldoceda selectively tendered his claim to CHRPP, thereby foreclosing CHRPP from seeking equitable contribution. CHRPP argues in response that the rule has only been applied to commercial insurance carriers and by statute CHRPP is not to be considered an insurance company or in the business of insurance. It further maintains that the plain language of the Risk Pooling Act, the legislative intent, and the provisions of CHRPP's Trust Agreement prevent the common law rules regarding selective tender from applying to a self-insured risk-pooling trust. To resolve this question, we must examine the nature of the Risk Pooling Act, the Trust Agreement, and the relationship of the relevant parties involved.

■ The impetus for enacting this particular risk-pooling legislation can best be understood in its historical context. It is generally recognized that during the 1970s there was a medical malpractice insurance crisis stemming from an increasing reluctance of insurance

companies to issue policies and the dramatic rise in premiums being demanded by those companies that were issuing policies. As a result, many health-care providers were forced to curtail or cease to render their services due to the difficulty in obtaining insurance at reasonable rates. *Anderson v. Wagner*, 79 Ill. 2d 295, 301, 402 N.E.2d 560, 562 (1979). In 1977, in the wake of this crisis, the Religious and Charitable Risk Pooling Trust Act was enacted to allow nonprofit organizations, including hospitals, to pool their risks of certain financial losses as a method of protecting themselves against the imposition of legal liability. 215 ILCS 150/2 (West 1998). Thus, the Act provided nonprofit hospitals with a cost-effective, alternative means to cover their medical malpractice liability instead of having to purchase insurance and pay premiums on the commercial market.

While the Act expresses that these trust funds "shall not be considered insurance companies or to be in the business of insurance" or be regulated under the Insurance Code (215 ILCS 150/25 (West 1998)), nothing in the Act exempts CHRPP from its common law contractual rights, duties, and obligations to indemnify covered persons as expressed in its Trust Agreement. Indeed, CHRPP has conceded that "in many respects the coverage provisions of the [T]rust [A]greement follow the same basic structure as an insurance policy."

In many ways, the CHRPP Trust Agreement purports to be a contract of insurance. It provides "hospital liability coverage" and further provides that it will pay on behalf of "Hospitals" judgments or settlements, as well as defense costs, incurred in response to medical malpractice suits. Additionally, to the extent that a physician qualifies as a "Covered Person" under the Trust Agreement, he is entitled to coverage for all sums that he becomes legally obligated to pay as damages due to malpractice injury. Each participating hospital is obligated to pay a contribution to the trust on behalf of covered persons, and each has a minimum deductible to be paid by the hospital. CHRPP has a claims management program, a risk management program, and an underwriting committee which has the right to seek a reservation of rights in relation to covered persons under the trust. The Trust Agreement includes an "other insurance" clause with provisions regarding the allocation of funds in cases where there is concurrent coverage. It also includes provisions to allow CHRPP to reinsure its risk. Furthermore, each participating hospital is required to provide written notice to CHRPP as soon as possible of any threatened claims against the hospital or covered persons.

Based upon the particular provisions in this Trust Agreement, CHRPP should be treated no differently than a traditional insurer for purposes of applying common law insurance principles as they relate

to coverage issues. For example, under the Trust Agreement, if the notice provisions of the contract are not adhered to, CHRPP would certainly be entitled to raise coverage defenses to any claim brought by a covered person for lack of timely notice. See, *e.g., Northbrook Property & Casualty Insurance Co. v. Applied Systems, Inc.*, 313 Ill. App. 3d 457, 466, 729 N.E.2d 915, 922 (2000). If CHRPP is entitled to its contractual rights under the Trust Agreement, we find no reason why it should not also be required to meet its contractual obligations to its covered persons.

Furthermore, *Burns* specifically makes it clear that the "selective tender" rule is concerned with construing the contractual relationship between the insurer and the covered person. Thus, the key question here is not whether a self-insured risk-pooling trust is insurance, but whether CHRPP's Trust Agreement and ISMIE's policy cover the loss to Dr. Baldoceda on the same basis such that the coverage provided to him is concurrent. As stated previously, the relationship between CHRPP and ISMIE is not effectuated until multiple coverage is triggered. See *Burns*, 189 Ill. 2d at 576-78, 727 N.E.2d at 216-17.

■ In construing the relevant relationship here, from Dr. Baldoceda's perspective, he has chosen to shift his risk of individual liability to ISMIE by paying a premium, and he has also chosen to shift his risk to CHRPP as a contracted-for benefit of his employment just as in *Burns*. 189 Ill. 2d at 571, 727 N.E.2d at 213-14 (where construction company paid a premium for its own liability insurance and also negotiated its additional insured status as a bargained-for benefit of its subcontract). For purposes of the "selective tender" rule, it does not matter to Dr. Baldoceda whether his coverage derives from a commercial carrier or from a private indemnity agreement. Nor is it of significance from Dr. Baldoceda's perspective how the coverage is funded, whether ISMIE funds the claims or reinsures them or whether the hospital pools its risk or purchases additional commercial coverage.

Moreover, nothing in the Act or the CHRPP Trust Agreement limits Dr. Baldoceda's right to exclusively select his CHRPP coverage and to knowingly forgo his ISMIE coverage. Had CHRPP or the participating hospitals desired to impose a contractual duty upon their covered persons to tender claims to all other insurers that cover the loss, they could have done so by providing such language in their Trust Agreement. *Alcan*, 303 Ill. App. 3d at 82, 707 N.E.2d at 693-94, citing *American Country Insurance Co. v. Kraemer Brothers, Inc.*, 298 Ill. App. 3d 805, 812, 699 N.E.2d 1056, 1061-62 (1998). Thus, where CHRPP has a concurrent obligation to cover the risk of Dr. Baldoceda, he has the "paramount" right to exclusively select his CHRPP coverage to the exclusion of his ISMIE coverage. By this holding, CHRPP is

only being required to do what it contracted for, provide indemnification for Dr. Baldoceda's individual liability arising out of his employment at the hospital.

■ CHRPP next argues that public policy dictates that it should not be responsible for the full amount of its obligation to Dr. Baldoceda under the "selective tender" rule. Specifically, it maintains that to do so would deplete the assets of the trust, reducing the amount of funds that could be funneled into the public health initiatives of CHRPP member hospitals. However, the purpose of the trust is not to provide a safe haven for nonprofit hospitals against employee claims but, rather, to provide a cost-effective means of obtaining coverage for its legal liabilities. Additionally, the Second District of this court recently rejected an argument that the rule unduly prejudices the targeted insurer because it holds it solely responsible without the benefit of equitable contribution. The court held that prejudice will always result when the insured elects a particular insurer. Nevertheless, Illinois has chosen to protect the insured's right to choose or knowingly forgo coverage over the insurer's right to contribution. *Pekin*, 318 Ill. App. 3d at 1144, 743 N.E.2d at 1083. Accordingly, we find that

CHRPP's status as a risk-pooling trust does not defeat the application of the "selective tender" rule and answer the first certified question in the affirmative.

However, although the above conclusion materially advances the termination of this litigation under Rule 308 (155 Ill. 2d R. 308), there are many unresolved factual and legal questions that impact on the ultimate determination of whether the "selective tender" rule applies to CHRPP in the instant case. A factual question remains as to whether Dr. Baldoceda effectively renounced the coverage under his ISMIE policy and properly perfected his selective tender of the claim to CHRPP. Dr. Baldoceda and his ISMIE-appointed defense attorney wrote to CHRPP that "[i]t is Dr. Baldoceda's wish to have his ISMI[E] coverage remain secondary; the ISMI[E] policy would be used only in the event that there was insufficient CHRPP coverage (primary and excess) to cover his entire loss." The trial court never reached this issue because it held that selective tender only applied to insurance companies in the strict sense of the term.

Additionally, the trial court never reached, and the parties did not fully address on appeal, whether CHRPP had a duty to defend Dr. Baldoceda. The "selective tender" rule presumes that both insurers have a concurrent coverage obligation. *Burns*, 189 Ill. 2d at 574-78, 727 N.E.2d at 214-17; *Alcan*, 303 Ill. App. 3d at 77-78, 707 N.E.2d at 690-91. Without a duty to defend, Dr. Baldoceda would not have two available policies from which to target and the selective tender rule would

therefore not be applicable to him.[2] Accordingly, if on remand the trial court finds that either CHRPP had no duty to defend Dr. Baldoceda in the Rivera claim or that Dr. Baldoceda failed to properly perfect the selective tender of his CHRPP coverage, CHRPP would not be subject to the selective tender rule in this case.

### Can CHRPP State a Cause of Action for Equitable Remedies?

Our disposition of the second certified question depends upon the answers to the above unresolved questions on remand. If the "selective tender" rule applies in the instant case, CHRPP would not be entitled to the equitable remedies it seeks from ISMIE. As explained in *Burns*, the targeted insurer has the sole responsibility to defend and indemnify its insured. 189 Ill. 2d at 575, 727 N.E.2d at 215. If, however, CHRPP had no duty to defend Dr. Baldoceda or he did not effectively perfect his tender of the defense and indemnity obligations exclusively to CHRPP, then we must consider whether CHRPP could state a cause of action for the equitable remedies it seeks.

■ Contribution is an equitable principle arising among co-insurers which permits one who has paid the entire loss to be reimbursed from other insurers that are also liable for the loss. *Schal Bovis, Inc. v. Casualty Insurance Co.*, 315 Ill. App. 3d 353, 362, 732 N.E.2d 1179, 1186 (2000). The reason for this rule is that one insurer has paid a debt that is equally owed by the other insurers. The fact that one insurer undertakes the burden of a full settlement payment does not mean the insurer is a volunteer. *Aetna Casualty & Surety Co. of Illinois v. James J. Benes & Associates, Inc.*, 229 Ill. App. 3d 413, 417, 593 N.E.2d 1087, 1090 (1992). In order for the settling party to recover in a contribution action, the policies must cover a risk on the same basis and there must be identity between the policies as to parties and insurable interests and risks. *Schal Bovis, Inc.*, 315 Ill. App. 3d at 362, 732 N.E.2d at 1186. Thus, since contribution claims are matters solely between insurers, the focus of question two shifts to the relationship between CHRPP and ISMIE.

■ Many courts have examined this relationship in the context of whether self-insurance can be considered "other valid and collectible

---

[2]We also note that the plain language of the Risk Pooling Act appears to limit indemnification for professional liability solely to the participating hospitals for their liabilities arising out of their corporate practices or for their role as *respondeat superior*. 215 ILCS 150/2, 5 (West 2000). However, we need not address this issue, where the parties both concede for purposes of this litigation that the Act also authorizes CHRPP to indemnify the employees of the participating hospitals for their legal liability while acting within the scope of their employment.

insurance" for the purpose of assigning liability between insurance providers and self-insureds. These courts have held that, when an entity chooses to completely retain the risk of a particular loss rather than obtain a traditional insurance policy, self-insurance is not insurance. As stated in *USX Corp. v. Liberty Mutual Insurance Co.*, "Illinois appears to have aligned itself with the majority in rejecting attempts by commercial carriers to treat self-insurance as 'other insurance' " in this context. *USX Corp. v. Liberty Mutual Insurance Co.*, 269 Ill. App. 3d 233, 243, 645 N.E.2d 396, 403 (1994).

For example, in *Benes*, 229 Ill. App. 3d 413, 593 N.E.2d 1087, the court considered whether the Intergovernmental Risk Management Agency (IRMA), a municipal joint risk management pool, had the same obligation to contribute to the settlement of a claim as an insurer. The court held that IRMA did not have the same obligation for purposes of equitable contribution because, " 'when a municipality self-insures, it bears all risks itself, and settlements or awards are paid directly from government coffers.' " *Benes*, 229 Ill. App. 3d at 421, 593 N.E.2d at 1092, quoting *Antiporek v. Village of Hillside*, 114 Ill. 2d 246, 250, 499 N.E.2d 1307, 1308 (1986). The court concluded that the sharing of risk among the self-insured entities under IRMA was distinguishable from the shifting of the same risk to for-profit companies. See also *St. John's Regional Health Center v. American Casualty Co. of Reading, Pennsylvania*, 980 F.2d 1222 (8th Cir. 1992) (pooled liability fund was not "other insurance"); *Wake County Hospital Systems, Inc. v. National Casualty Co.*, 804 F. Supp. 768 (E.D.N.C. 1992) (holding that hospital's self-insured retention did not constitute "other valid and collectible insurance" within meaning of "other insurance" clause of nurse's commercial policy); *Physicians Insurance Co. of Ohio v. Grandview Hospital & Medical Center*, 44 Ohio App. 3d 157, 542 N.E.2d 706 (1988) (determining that self-insured hospital's contract to provide professional liability coverage for its residents was not "other insurance" within the meaning of residents' professional liability policy, and characterizing self-insurance as the "antithesis" of insurance since it is the retention of the risk of loss by one upon whom it is directly imposed by law or contract); *American Nurses Ass'n v. Passaic General Hospital*, 98 N.J. 83, 484 A.2d 670 (1984) (holding hospital's self-insured retention was not "other insurance"). Accordingly, a true self-insured does not share an identity of insurable interests and risks with a traditional insurance carrier because it has chosen to retain its risk rather than shift any of that risk to a commercial carrier. Therefore, there can be no equitable contribution from the commercial carrier or to the commercial carrier.

However, the facts in this case present us with a unique set of

circumstances. Here, unlike in *Benes* or any of the other cited cases, CHRPP, like ISMIE, has chosen to include an "other insurance" clause in its Trust Agreement. By doing so, it seeks to share the risk of loss with a commercial carrier when they have coincidental coverage, and it is therefore something other than a pure self-insured which, as stated previously, chooses to retain all of its risk. As such, CHRPP and ISMIE should be treated no differently than they were treated in *Padilla*. Where both CHRPP and ISMIE have a duty to indemnify Dr. Baldoceda for the Rivera claim, CHRPP is entitled to seek contribution for the settlement costs it paid on behalf of Dr. Baldoceda.

We reject ISMIE's argument that, if CHRPP had no duty to defend, it does not insure the same interests and risks for purposes of contribution. " 'It is not necessary that the policies provide identical coverage in all respects in order for the two policies to be considered concurrent,' " and " 'as long as the particular risk actually involved in the case is covered by both policies, the coverage is duplicate, and contribution will be allowed.' " *Schal Bovis, Inc.*, 315 Ill. App. 3d at 363, 732 N.E.2d at 1186, quoting 15 Couch on Insurance § 218:6 (3d ed. 1999). Here, both CHRPP and ISMIE had a primary duty to indemnify Dr. Baldoceda and CHRPP seeks contribution for indemnification costs only. Accordingly, we find that CHRPP's status as a risk-pooling trust does not defeat its cause of action for contribution.

We further find that, where the "other insurance" clauses of CHRPP's Trust Agreement and ISMIE's policy govern the relationship of the parties in allocating liability, CHRPP cannot state a cause of action for unjust enrichment or *quantum meruit*. *People ex rel. Hartigan v. E&E Hauling, Inc.*, 153 Ill. 2d 473, 497, 607 N.E.2d 165, 177 (1992); *Canel & Hale, Ltd. v. Tobin*, 304 Ill. App. 3d 906, 913, 710 N.E.2d 861, 868 (1999). Lastly, we decline to address ISMIE's counterclaim for defense costs where it is outside the scope of the certified questions.

Accordingly, for the foregoing reasons, we answer the certified questions and remand for further proceedings consistent with this opinion.

Certified questions answered; cause remanded.

REID, J., concurs.

JUSTICE QUINN, specially concurring:
I concur in the holdings and in the answers given to the certified questions in this opinion. I write separately to express my concern with the whole theory of "selected tender." In *John Burns Construction Co. v. Indiana Insurance Co.*, 189 Ill. 2d 570, 574, 727 N.E.2d 211

(2000), our supreme court articulated the question as follows: "[W]hether an insurer to whom litigation is tendered and whose policy contains an 'other insurance' clause like the one above may seek contribution from another insurer whose policy is in existence but whose coverage the insured has refused to invoke." In answering this question in the negative, the court relied upon the holdings in *Alcan United, Inc. v. West Bend Mutual Insurance Co.*, 303 Ill. App. 3d 72, 707 N.E.2d 687 (1999), *Bituminous Casualty Corp. v. Royal Insurance Co. of America*, 301 Ill. App. 3d 720, 704 N.E.2d 74 (1998), and *Cincinnati Cos. v. West American Insurance Co.*, 183 Ill. 2d 317, 701 N.E.2d 499 (1998). All three of these cases, in turn, relied upon an interpretation of *Institute of London Underwriters v. Hartford Fire Insurance Co.*, 234 Ill. App. 3d 70, 599 N.E.2d 1331 (1992).

In *Burns*, our supreme court explained their reasoning as follows: "The insurance provided to Burns by Royal was not 'available,' in the language of the other insurance provision, for Burns had expressly declined to invoke that coverage. Moreover, we do not believe that the presence of the 'other insurance' provisions in the Indiana policy serves by itself to trigger the coverage afforded by Royal's policy. An 'other insurance' provision does not in itself overcome the right of an insured to tender defense of an action to one insurer alone." *Burns*, 189 Ill. 2d at 578.

Apparently, Illinois is the only state that recognizes this "right." The *raison d'etre* for this right has been explained thusly: "'[The] insured may choose to forgo an insurer's assistance for various reasons, such as the insured's fear that premiums would be increased, or the policy cancelled, in the future," and this "ability to forgo that assistance should be protected." *Cincinnati Cos.*, 183 Ill. 2d at 326. The insured may base the exercise of this "right" on any reason or no reason at all. When an insured exercises this "right," the targeted insurer is precluded from obtaining equitable contribution from other insurers that insure the same risk. This makes it much more difficult for insurers to determine the extent of the risk they potentially face in every policy they issue.

In *Cincinnati Cos.*, our supreme court addressed what type of notice to an insurer was required to trigger the duty to defend. In doing so, the court commented that some courts required that the insured actually tender its defense to the insurer before the duty to defend is triggered, citing *Institute of London* as being an example. *Cincinnati Cos.*, 183 Ill. 2d at 324. The court rejected the argument advanced by "tender rule courts" that "allowing mere notice to trigger the duty to defend would require the insurer to 'intermeddle officiously' in the underlying litigation." *Cincinnati Cos.*, 183 Ill. 2d at 327, citing *Institute of London* 234 Ill. App. 3d at 78-79.

In *Burns,* the supreme court commented that in *Cincinnati Cos.* "this court considered what is necessary to trigger an insurer's duty to defend, and held that the duty arises with actual notice of a claim against an insured, regardless of the insured's level of sophistication.[3] In reaching that result, the court acknowledged the line of authority that granted an insured the right to elect which of its insurers will defend a particular case." *Burns,* 189 Ill. 2d at 574-75, citing *Cincinnati Cos.,* 183 Ill. 2d at 324. That "line of authority" consisted entirely of a cite to *Institute of London.*

In *Alcan,* the insured tendered its defense to West Bend. The insured informed Reliance Insurance that it was looking only to West Bend for coverage and did not want Reliance to provide coverage for the incident. The appellate court rejected West Bend's argument that its policy's "other insurance" clause distinguished the case from *Institute of London,* as in *Institute of London,* the insurer to whom tender was made had no such clause in its policy:

> "[L]anguage in *Institute of London* suggests that the result in that case would not have been different had Institute's policy contained an 'other insurance' clause. In that regard the court stated:
>
> > ' " 'Only when a policy is triggered and the insurer becomes obligated to pay "all sums" and to defend "any suit" does the "other insurance" clause come into play to allow liability to be apportioned among the insurers.' " ' *Institute of London,* 234 Ill. App. 3d at 77 ***." *Alcan,* 303 Ill. App. 3d at 81.

A plain reading of the cited language from *Institute of London* in no way "suggests that the result in that case would not have been different had Institute's policy contained an 'other insurance' clause." *Alcan,* 303 Ill. App. 3d at 81. The quoted language refers to the policy of the insurer to whom tender was made. While tender was made to Institute, its policy had no "other insurance" clause. As no tender had been made to Hartford, Hartford's "other insurance" clause did not "come into play." Even if one were to accept the *Alcan* court's hypothesis, its holding that the "other insurance" clause in the policy of the insurer to whom tender was made should be disregarded is based on a "suggestion" contained in *dicta.*

The court in *Bituminous Casualty* looked at *Institute of London*'s

---

[3] I note that the court in *Cincinnati Cos.* also held that "the insurer's duty to defend is triggered by actual notice of the underlying *suit,* regardless of the level of the insured's sophistication." Further, " 'actual notice' should be defined as 'notice sufficient to permit the insurer to locate and defend the lawsuit.' " (Emphasis added.) *Cincinnati Cos.,* 183 Ill. 2d at 329. While both statements are arguably correct, the manner in which they are presented may lead to unnecessary confusion.

language that " 'if the policy is never triggered, the issue of liability under the "other insurance" clause does not arise.' " *Bituminous Casualty*, 301 Ill. App. 3d at 726, quoting *Institute*, 234 Ill. App. 3d at 77. The court interpreted this as follows:

"It is only when an insurer's policy is triggered that the insurer becomes liable for the defense and indemnity costs of a claim, and it becomes necessary to allocate the loss among co-insurers. The loss will be allocated according to the terms of the 'other insurance' clauses, if any, in the policies that have been triggered. As discussed above, Royal's policy was not triggered and its obligation to defend and indemnify Johnson Construction with regard to the Peterman lawsuit was excused by the targeted tender to Bituminous." *Bituminous Casualty*, 301 Ill. App. 3d at 726.

As in *Alcan*, this analysis does not take into account the use of the singular form of the word "policy" in *Institute of London*. Applying the plain language of *Institute of London*, if the triggered policy contains an "other insurance" clause, the loss should be allocated according to the terms of that clause. Put simply, the amount and nature of the coverage provided should be determined by the language of the policy issued by the insurer to whom tender has been made. If that policy provides for equitable contribution from other insurers covering the same risk, that policy's provisions should control.

*Bituminous* opined that if one insurer was able to trigger the insured's coverage under another insurer's policy, the policy of the insurer to whom tender was not made becomes, in effect, a third-party beneficiary contract entered into by the insured for the direct benefit of other insurers. *Bituminous Casualty*, 301 Ill. App. 3d at 726, citing *Institute of London*, 234 Ill. App. 3d at 79. *Institute of London*, in turn, cited *Sabath v. Mansfield*, 60 Ill. App. 3d 1008, 1016, 377 N.E.2d 161 (1978), in support of this proposition. However, *Sabath* involved a lawsuit in which a stockholder of a corporation sued a company based on a construction contract. *Sabath* stands for the well-settled proposition that a person may sue as a third-party beneficiary of a contract only when the contract clearly shows that it was made for his direct benefit. *Sabath*, 60 Ill. App. 3d at 1016. I do not believe that this principle of contract law provides a basis to disregard the (until recently) equally well-settled principles of equitable contribution in the context of insurance law.

Finally, accepting (as we must) that an 'other insurance' clause alone cannot overcome an insured's right to selective tender, left unanswered by all of the previously cited cases is what, if any, steps insurers may take to protect their right to equitable contribution in the face of a "target tender." In *American Country Insurance Co. v.*

*Kraemer Brothers, Inc.*, 298 Ill. App. 3d 805, 812 (1998), this court considered the effect of an insurance policy provision requiring the insured to:

> "Promptly tender the defense of any claim made or 'suit' to any other insurer which also has available insurance for a loss which we cover under Coverage A or B of this coverage part."

This court held that, in selectively tendering his defense to only the insurer whose policy contained the above language, the insured "clearly breached the terms of the *** policy and is not entitled to a defense or indemnity." *American Country*, 298 Ill. App. 3d at 812. As this case refers to "available insurance," it would seem that this case's viability is in serious doubt based on *Burns'* holding that insurance is not "available" when the insured refuses to tender his defense or request for indemnification to that insurer.

In the vast area of legal jurisprudence, there are undoubtedly many instances where being the first, or only, jurisdiction to grant rights to persons or entities may rightly be a source of pride. While it is still very early, the doctrine of "selective tender" does not appear to me to be one of those instances.